IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **NEONA CHASTAIN**, **JANIE HAHN**, **PATRICIA HARRIS**, **LISA PAYTON**, **JILL TOWNSEND**, **DESIREE BALDWIN**, and **KAITLIN LOGAN**, individually and on behalf of others similarly situated, | Case No. 3:13-cv-01802-SI<br><br>**OPINION AND ORDER** |
| Plaintiffs, | |
| v. | |
| **ANTONIA CAM, GEORGI CAM**, and **BUTLER INVESTMENTS, INC.**, d/b/a Canby Pub & Grill, | |
| Defendants. | |

Jon M. Egan, JON M. EGAN, P.C., 240 Sixth Street, Lake Oswego, OR 97034. Of Attorneys for Plaintiffs.

Eric J. Fjelstad, SMITH & FJELSTAD, 722 N. Main Avenue, Gresham, OR 97030. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiffs Neona Chastain, Janie Hahn, Patricia Harris, Lisa Payton, Jill Townsend,

Desiree Baldwin, and Kaitlin Logan (collectively "Plaintiffs") bring this action against

Defendants Antonia Cam, Georgi Cam, and Butler Investments, Inc. (collectively "Defendants")

for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

Presently before the Court is Plaintiffs' motion for preliminary collective certification under

FLSA § 216(b), discovery of collective members' contact information, and issuance of court-

authorized notice. For the reasons discussed below, the Court grants in part and denies in part

Plaintiffs' motion.

## STANDARDS

Section 6 of the FLSA, 29 U.S.C. § 206(a)(1)(C), requires an employer to pay employees

of "an enterprise engaged in commerce" a minimum of $7.25 an hour. Section 7 of the FLSA, 29

U.S.C. § 207(a)(1), requires employers to pay employees an overtime rate of one and one-half

times their regular pay rate for hours worked over 40 hours in a week. The statute permits an

aggrieved employee to bring a collective action on behalf of himself or herself and other

"similarly situated" employees based allegations that an employer violated the provisions of

§ 206 or § 207. 29 U.S.C. § 216(b).[1]

An employee only becomes a party to a collective action under the FLSA after that

employee's consent is filed with the court. *Id.* ("No employee shall be a party plaintiff to any

such action unless he gives his consent in writing to become such a party and such consent is

filed in the court in which such action is brought."). In *Hoffmann-La Roche Inc. v. Sperling*, 493

U.S. 165 (1989), the Supreme Court held that district courts have discretion to facilitate the

---

[1] A "collective action" differs from a class action under Rule 23 of the Federal Rules of Civil Procedure because the putative plaintiff in a collective action "must opt *into* the suit by 'giv[ing] his consent in writing.'" *McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007) (alteration and emphasis in original) (quoting 29 U.S.C. § 216(b)); *see Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525, 528 (9th Cir. 2013). In contrast, a class action under Rule 23 binds all class members unless they "opt *out* of the suit." *Id.*; *see Busk*, 713 F.3d at 528 (comparing a collective action under the FLSA to class certification under Rule 23).

process of notifying potential collective-action members. *Id.* at 171. The district court's authority includes authorizing the named plaintiffs to send notice to prospective collective-action members, settling disputes about the content of the notice, and setting deadlines by which opt-in plaintiffs must file their consent-to-join forms. *Id.* at 171-72; *see also Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000) (A "district court may authorize the named plaintiffs in a FLSA collective action to send notice to all potential plaintiffs . . . and may set a deadline for plaintiffs to join the suit by filing consents to sue." (citing *Hoffmann-La Roche*, 493 U.S. at 169, 172)).

The threshold question before the Court is whether Plaintiffs can demonstrate that the putative collective-action members are "similarly situated" pursuant to § 216(b). *See Margulies v. Tri-Cnty. Metro. Transp. Dist. of Or.*, 2013 WL 5593040, at *14 (D. Or. Oct. 10, 2013) ("'[T]he plaintiffs bear the burden of showing that the representative plaintiffs and proposed collective action group are 'similarly situated.'") (quoting *Valladon v. City of Oakland*, 2009 WL 2591346, at *7 (N.D. Cal. Aug. 21, 2009)). The FLSA does not define the term "similarly situated," and neither the Supreme Court nor the Ninth Circuit have articulated a controlling test. *Id.* at *15; *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 470 (E.D. Cal. Mar. 5, 2010) (collecting cases). The majority of courts apply a two-step analysis to determine whether the potential plaintiffs are similarly situated. *See Margulies*, 2013 WL 5593040, at *15; *Gessele v. Jack in the Box, Inc.*, 2013 WL 1326538, at *3-4 (D. Or. Apr. 1, 2013) (explaining the two-step approach and a basis to adopt an "intermediate" approach when there has been substantial discovery in a matter); *Murillo*, 266 F.R.D. at 470-71; *see also Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) (finding that the district court did not err in adopting the two-step approach).

The first step involves the court making an "initial 'notice stage' determination of whether plaintiffs are 'similarly situated.'" *Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). This determination involves "'nothing more than substantial allegations that the putative [collective] members were together the victims of a single decision, policy, or plan.'" *Id.* (quoting *Bayles v. Am. Med. Response of Colo., Inc.*, 950 F. Supp. 1053, 1066 (D. Colo. 1996)); *see Margulies*, 2013 WL 5593040, at *15 (same). This inquiry is considered a "less stringent standard than the requirements for certification under Rule 23," *Dickerson v. Cable Commc'ns, Inc.*, 2013 WL 6178460, at *2 n.5 (D. Or. Nov. 25, 2013), and "typically results in certification." *Margulies*, 2013 WL 5593040, at *15 (quoting *Carrillo v. Schneider Logistics, Inc.*, 2012 WL 556309, at *10 (C.D. Cal. Jan.31, 2012)). Accordingly, courts "generally do not evaluate the merits of the claims or make credibility determinations at the conditional certification stage." 2 Fed. Labor Standards Legislation Comm., Am. Bar Ass'n, *The Fair Labor Standards Act* § 19.IV.A at 19-20 (Ellen C. Kearns et al. eds., 2d ed. 2010) (footnotes omitted) (hereinafter "Kearns, *The Fair Labor Standards Act*"); *see Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 538 (N.D. Cal. 2007) (declining to resolve a dispute between competing affidavits at the first-step analysis stage for FLSA collective certification).

The second step in a FLSA collective certification typically occurs after discovery is complete, at which time the defendants may move to decertify the class. *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004). The second-step analysis is more rigorous than what occurs during the first-stage analysis, but is still "'considerably less stringent than the requirement of Rule 23(b)(3) that common questions predominate.'" *Troy v. Kehe Food Distribs., Inc.*, 276 F.R.D. 642, 649 (W.D. Wash. 2011) (quoting *Grayson v. K Mart Corp.*, 79

F.3d 1086, 1096 (11th Cir. 1996)); *see Thiessen*, 267 F.3d at 1102-03. At the second step, a court

must review "several factors, including the specific employment conditions and duties of the

individual plaintiffs, any defenses asserted by or available to the defendant which appear to be

individual to each plaintiff, fairness and procedural considerations, and whether the plaintiffs

made any required filings before instituting suit." *Morden v. T–Mobile USA, Inc.*, 2006 WL

2620320, at *2 (W.D. Wash. Sept. 12, 2006) (citing *Thiessen*, 267 F.3d at 1103). "The district

court has discretion to determine whether a collective action is appropriate." *Goudie v. Cable*

*Commc'ns, Inc.*, 2008 WL 4628394, at *4 (D. Or. Oct. 14, 2008).

## BACKGROUND

Plaintiffs allege these facts relevant to their FLSA claims and in support of their motion

for preliminary collective certification. Defendants in this case are all current or former owners

of the Canby Pub & Grill located in Canby, Oregon. Defendant Butler Investments, Inc.

("Butler") is an Oregon corporation owned by Thomas Joseph Butler III. Butler operated the

Canby Pub & Grill until mid-2011 on land owned by Defendants Antonia and Georgi Cam

(collectively "the Cams"). In approximately May of 2011, the Cams bought and began operating

the Canby Pub & Grill from Butler. The Cams have used various different corporate names and

identities throughout their ownership and involvement with Plaintiffs in this matter.

Defendants employed Plaintiffs at the Canby Pub & Grill as nonexempt hourly

employees. Defendants required Plaintiffs to purchase uniform shirts, aprons, name tags, pens,

crayons, and lighters for use on the job at their own expense and on their own time. Plaintiffs

were also required nightly to launder their uniform shirts and aprons. Defendants also required

Plaintiffs to pay for customer meals in which a mistake was made, to pay for and provide

disgruntled customers with gift cards, and to pay for any customer damages resulting from errors

in credit and debit card transactions. These fees were either deducted directly from Plaintiffs'

paychecks without prior written permission or Defendants required Plaintiffs to pay those amounts from their bank at the end of the shift.

In addition to these expenses, Defendants required Plaintiffs to preform work before clocking in and after clocking out of the timekeeping system, and Defendants never compensated Plaintiffs for this work. Moreover, Plaintiffs who clocked in more than five minutes before their shift was scheduled to begin, clocked out more than ten minutes after a shift was scheduled to end, or clocked out "too long" after the last customer paid his or her bill found Defendants automatically deucting time off of Plaintiffs paychecks through Defendants' point of sale system. Plaintiffs were also not compensated for breaks of fewer than 30 minutes. Defendants also failed on occasion to pay Plaintiffs on their regular paydays. In addition to declarations from Plaintiffs making these allegations, Plaintiffs also supplied bank records from Defendants demonstrating that for certain pay periods Defendants had insufficient funds to meet their payroll requirements. Finally, some Plaintiffs contend that after termination of their employment, they did not receive their final paychecks within the statutorily-mandated time period.

The policies described above were applied to all Canby Pub & Grill employees. Specifically, adjustments made by Defendants' point of sale system were uniformly applied to all employees. Plaintiffs allege that as a result of Defendants' deductions and practices, they were paid less than the applicable federal minimum wage and, for weeks where Plaintiffs worked more than 40 hours, this also resulted in nonpayment of the required time-and-a-half overtime for that workweek.

## DISCUSSION

In Plaintiffs' motion for preliminary collective certification, Plaintiffs request that the Court: (1) preliminarily certify a FLSA § 216(b) collective action consisting of all employees of Butler Investments, Inc. and Canby Pub & Grill from October 9, 2010 to present; (2) appoint Jon

M. Egan, P.C. as counsel for the collective action; (3) require Defendants to produce within 14 days of the Court's ruling on this motion the names, last known addresses, telephone numbers, and email addresses for all employees of Butler Investments, Inc. and the Canby Pub & Grill who received a paycheck on or after October 9, 2010; (4) authorize collective counsel to issue notice to the putative collective members in the form proposed by Plaintiffs; (5) authorize a 60-day opt-in period for putative collective members to postmark their opt-in election notice; and (6) toll the statute of limitations for the putative collective members in the interim.

## A. Preliminary Certification

An employee may bring an action alleging a FLSA violation on behalf of himself or herself and "other employees similarly situated." 29 U.S.C. § 216(b). In order to meet their burden, Plaintiffs must demonstrate that they were the victims of a single decision, policy, or plan of Defendants. *See Thiessen*, 267 F.3d at 1102. The Court looks to "pleadings and affidavits submitted by the parties" and does not address the merits of Plaintiffs' claims at this stage. *Goudie*, 2008 WL 4628394, at *5 (citation and quotation marks omitted).

Plaintiffs request that the Court preliminarily certify a FLSA § 216(b) collective action consisting of all employees of Butler Investments, Inc. and Canby Pub & Grill from October 9, 2010 to present. In their complaint and as relevant to this motion, Plaintiffs allege that Defendants violated FLSA minimum wage and overtime laws. Plaintiffs argue that they and putative collective members are all nonexempt hourly employees at the Canby Pub & Grill and were subject to the same policies and procedures.

Defendants argue that the Court should deny the motion for preliminary certification because: (1) Plaintiffs submitted insufficient evidence to establish that Defendants failed to pay putative collective members on established paydays; (2) even if Defendants gave putative collective members a paycheck one day late, that is not a violation of the FLSA; (3) regarding

the time-reduction claim, six of the Plaintiffs have been paid for all of the time taken off their paychecks after a demand was made for such compensation; (4) the time-reduction claim is only applicable after May 2011 when Defendant Antonia Cam became the owner of the Canby Pub & Grill and not dating back to October 9, 2010; (5) regarding the pay-deduction claim, Plaintiffs have different types of deduction claims in varying amounts and small claims for compensation may be barred by the FLSA *de minimis* rule; and (6) the allegedly uncompensated time worked off the clock and the unpaid break time ranges widely among the individual plaintiffs. Each challenge is addressed in turn.

### 1.  Payment on Established Paydays

Defendants' challenge to Plaintiffs' claim alleging failure to pay timely goes to the merits of Plaintiffs' claims rather than to the existence of a common policy or plan in violation of the FLSA. *See Goudie*, 2008 WL 4628394, at *6. The declarations of Neona Chastain, Janie Hahn, Patricia Harris, Lisa Payton, Jill Townsend, Desiree Baldwin, and Kaitlin Logan allege that they were subject to identical compensation policies and structures. *See* Pls.' Decls. *passim*, Dkt. 14 (explaining that "each of the various owners and managers applied the wage and hour policies the same to everyone," "[w]hen a new rule was put in, it was put in for everyone," and rules that changed in the point of sale system "automatically appli[ed] to everyone"). Plaintiffs also submitted bank records from the Canby Pub & Grill showing that it had insufficient funds on designated paydays in support of Plaintiffs' theory that Defendants paid Plaintiffs after established paydays. *See* Egan Decl. ¶ 2, and pp. 6-12, Dkt. 13. Defendants respond that the banking records do not establish a failure to issue paychecks on designated paydays. Rather than determine the merits of Plaintiffs' evidence, the Court finds that the combination of the allegations in Plaintiffs' complaint and the evidence presented are sufficient at this early stage to

substantially allege a common policy or practice regarding Defendants' failure to pay employees on established paydays.

### 2. Payment after Established Paydays as a Violation of the FLSA

Defendants next argue that even assuming employee paychecks were delivered after an established payday, that is not enough to establish a violation of the FLSA. Plaintiffs respond that it is established law in the Ninth Circuit that the failure to pay on an employee's regular payday violates the FLSA. *See Biggs v. Wilson*, 1 F.3d 1537, 1543-44 (9th Cir. 1993). The Court agrees with Plaintiffs. Moreover, the substantive validity of Defendants' argument delves into the merits of Plaintiffs' claims, which would be an inappropriate inquiry for the Court at this stage of the FLSA collective certification inquiry. Defendants also provided several affidavits from current employees at the Canby Pub & Grill stating that they have not been paid late. The Court finds that at the preliminary certification stage, it is inappropriate to delve into the individualized facts from employees "hand-picked" by Defendants, and that such "happy camper" affidavits should not be considered until the second-step analysis. *See Creely v. HCR Manorcare, Inc.*, 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011).

### 3. Time-Reduction Claim

Defendants also challenge whether Plaintiffs are similarly situated on the time-reduction claim. Defendants do not argue that there is no common practice alleged and, instead, focus on the fact that six of the named Plaintiffs have been paid for their time-reduction claims by Defendant Antonia Cam. Plaintiffs contend that Defendant Antonia Cam regularly deducted time for employees that clocked in early or clocked out late. Plaintiffs' allegations and declarations sufficiently allege that Defendants deducted time off paychecks when certain conditions occurred, such as clocking in more than five minutes before a shift or staying on the clock "too long" after the last diner paid his or her bill. Some of the named Plaintiffs may be barred from

recovering on a time-reduction claim, yet "'the potentially individualized nature of determining damages is irrelevant in considering conditional certification [because] [t]he threshold inquiry does not require that the extent of the potential plaintiffs' damages be identical or even similar.'" *Wren v. RGIS Inventory Specialists*, 2007 WL 4532218, at *5 (N.D. Cal. Dec. 19, 2007) (quoting *Adams*, 242 F.R.D. at 537). The fact that six individuals may have limited damages against Defendants with respect to this claim is immaterial to the question of whether Plaintiffs were subject to a "single illegal policy, plan or decision." *See Leuthold*, 224 F.R.D. at 468. Thus, the Court rejects Defendants' argument.

### 4. Time Period for the Time-Reduction Claims

Regarding the relevant time period for Plaintiffs' time-reduction claims, Defendants argue that there can only be a common policy or practice after May of 2011 when Defendants Antonia and Georgi Cam bought and began operating the Canby Pub & Grill. Plaintiffs allege in their complaint, however, that the "Cams have at various times used various different corporate names, intermingling and mixing and matching various identities and assets of the various entities in their dealings with Plaintiffs." Pls.' Compl. ¶ 6, Dkt. 1. Plaintiffs also allege that before mid-2011, the Cams owned the property where the Canby Pub & Grill operated. *Id.* In addition to these allegations, Plaintiffs argue that a longer time period is necessary for the purposes of establishing the relevant statute of limitations.

Plaintiffs may be able to establish a common policy or practice despite the change in ownership of the Canby Pub & Grill. Moreover, in the event Plaintiffs prove a willful violation of the FLSA, a longer time period would be appropriate for the purposes of establishing the correct statute of limitations. *See Margulies*, 2013 WL 5593040, at *19 (permitting a longer relevant notice period to determine whether there is sufficient evidence establishing a willful violation of the FLSA); *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 835 (E.D. Va. 2008)

(conditionally certifying a class for a longer period of time until the applicable limitations period is established for the purpose of judicial economy). To the extent discovery reveals no willful violations before May of 2011 or a meaningful distinction between the actions taken by the several owners of the Canby Pub & Grill, the relevant time period may decrease in duration. *Cf. Sheffield v. Orius Corp.*, 211 F.R.D. 411, 416-17 (D. Or. 2002) (denying preliminary collective certification because the proposed collective plaintiffs were "employed by numerous defendants," "paid either by piece work, hourly or salaried," "held a variety of job classifications, and did not work at the same job site"). At the second-step analysis stage, Defendants may move to decertify the class for the time period before Defendants engaged in a common practice or policy. For the purposes of preliminary conditional certification, however, the Court is satisfied with the longer time period, particularly in light of Plaintiffs' allegations that the Cams were involved with the Canby Pub & Grill before May of 2011. *See Aguilar v. Complete Landsculpture, Inc.*, 2004 WL 2293842, at *3 (N.D. Tex. Oct. 7, 2004) (citing cases and explaining that there is precedent for conditionally certifying a FLSA collective that consists of employees of related employers).

### 5.  Pay-Deduction Claims

Defendants' fifth challenge is that Plaintiffs' pay-deduction claim amounts vary between particular plaintiffs and some of those claims may be *de minimis* and therefore not subject to recovery. Plaintiffs respond that Defendants' argument relates to the merits. Further, Plaintiffs argue that Defendants implemented a consistent policy or practice and, even if some Plaintiffs suffered small damages, the *de minimis* rule is inapplicable to Plaintiffs' FLSA claims. The Court does not address at this time the merits of the *de minimis* rule because it is properly addressed after discovery at the second-step analysis for FLSA certification. *See Leuthold*, 224

F.R.D. at 468. Moreover, varying damages among Plaintiffs is not a valid reason to deny preliminary certification. *See Wren*, 2007 WL 4532218, at *5.

### 6. Uncompensated-Time Claims

Defendants' final argument opposing preliminary collective certification is that allegedly uncompensated time worked off the clock and unpaid break time amounts range widely between individual plaintiffs. The Court finds that Plaintiffs have articulated a common company policy and provided substantial allegations of the existence of other employees effected by the policy. Plaintiffs allege in their complaint that Defendants required Canby Pub & Grill employees to perform work before and after they were clocked into the timekeeping system. Pls.' Compl. ¶ 10, Dkt. 1. Plaintiffs also allege that Defendants did not pay Plaintiffs and collective members for breaks of fewer than 30 minutes. *Id.* ¶ 13. These allegations are buttressed by Plaintiffs' declarations, which explain that Defendants implemented rules that were applicable to all employees and that all employees were required to work off the clock. Pl.'s Decls., Dkt. 14.

The substantial allegations in Plaintiffs' complaint and declarations raise a reasonable inference at this early stage that Defendants had a common policy in place that may be sufficient to establish a violation of FLSA's overtime and minimum wage requirements. *See Goudie*, 2008 WL 4628394, at *6 (granting conditional certification where there were no declarations, but the complaint contained detailed allegations and plaintiffs provided deposition testimony from defendant's employees demonstrating the potential class members had identical job descriptions); *see also Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 321-22 (S.D.N.Y. 2007) (granting conditional certification where plaintiffs alleged the defendant engaged in a broad practice of failing to pay employees for all of their time worked). The fact that the individual damages suffered by Plaintiffs may vary does not justify denying preliminary conditional certification and is best suited for the second-step analysis after the close of

discovery. *See Wren*, 2007 WL 4532218, at *5; *Brown v. Money Tree Mortg., Inc.*, 222

F.R.D. 676, 682 (D. Kan. 2004) (citing *Thiessen*, 267 F.3d at 1102-03).

### 7. Conclusion

The Court finds that Plaintiffs satisfied their minimal burden of showing that all

employees of Butler Investments, Inc. and Canby Pub & Grill from October 9, 2010 to present

are similarly situated to the named Plaintiffs. Accordingly, the Court grants Plaintiffs' motion for

preliminary conditional certification of the FLSA collective action.

## B. Proposed Notice

Defendants challenge both the time period and content in Plaintiffs' proposed notice to

potential opt-in collective-action members. The Court addresses each challenge in turn.

### 1. Notice Time Period

Defendants argue that the notice time period beginning on October 9, 2010 is in conflict

with the applicable statute of limitations for FLSA claims. Defendants contend that the statute of

limitations for FLSA claims is two years, begins to run against putative collective members once

the members' claim accrues, and continues to run until the members' opt-in consent form is filed

with the Court. Plaintiffs respond that for willful violations, the statute of limitations for an

FLSA claim becomes three years. Moreover, Plaintiffs note that "any given opt-in Plaintiff may

be eligible for equitable extension of the statute of limitations, but the facts supporting such an

extension will usually not be known until she or he actually opts in and has a chance to speak

with collective counsel." Pl.'s Reply at 9-10, Dkt. 34. Accordingly, Plaintiffs urge the Court to

authorize notice to putative opt-in plaintiffs employed within three years preceding the filing of

the complaint.

The FLSA provides for a two-year statute of limitations for FLSA violations, "except that

a cause of action arising out of a willful violation may be commenced within three years after the

cause of action accrued." 29 U.S.C. § 255(a). In a collective action, the action is not

"commenced" for an opt-in collective member until that member's "written consent [to join the

action] is filed in the court in which the action was commenced." 29 U.S.C. § 256(b). Plaintiffs

request that the Court send notice to all putative collective members employed by Defendants on

or after October 9, 2010. In the event a putative plaintiff establishes that Defendants willfully

violated the FLSA, a cause of action "may be commenced within three years after the cause of

action accrued." *See* 29 U.S.C. § 255(a); *see also McLaughlin v. Richland Shoe Co.*, 486 U.S.

128, 133 (1988) (explaining the meaning of "willful" as used in the FLSA). At this stage of the

proceeding, Plaintiffs have substantially alleged a willful violation of the FLSA, which may in

turn extend the applicable statute of limitations for an opt-in plaintiff from two years to three

years.

      Moreover, the Court finds a second reason to use a longer notice period. Beyond the issue

of a willful violation of the FLSA, an opt-in plaintiff may be eligible for an equitable extension[2]

---

[2] There "are two types of equitable modification, equitable tolling and equitable
estoppel." *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1050 (9th Cir. 1987). The doctrine
of equitable tolling applies where the plaintiff has "excusable ignorance of the limitations
period" and there is a "lack of prejudice to the defendant." *Forester v. Chertoff*, 500 F.3d 920,
929 (9th Cir. 2007) (citation and quotation marks omitted). On the other hand, the doctrine of
equitable estoppel "'focuses primarily on the actions taken by the defendant in preventing a
plaintiff from filing suit.'" *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1009 (9th Cir. 2011)
(quoting *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002)). In *Stoll v. Runyon*, 165 F.3d
1238 (9th Cir. 1999), however, the Ninth Circuit collapsed the distinction between equitable
tolling and equitable estoppel. Moreover, some courts have continued to collapse this distinction.
*See, e.g.*, *Hensley v. United States*, 531 F.3d 1052, 1057-58 (9th Cir. 2008); *Huynh v. Chase
Manhattan Bank*, 465 F.3d 992, 1004 (9th Cir. 2006); *Ribot v. Farmers Ins. Grp.*, 2013 WL
3778784, at *16 (C.D. Cal. July 17, 2013).

      The Court analyzes the doctrine of equitable estoppel and equitable tolling separately.
Although some courts view the doctrines in combination, there is a distinction between the two
for the appellate standard of review. *See Forester*, 500 F.3d at 929 & n.11 (explaining that the
standard of review for the application of equitable tolling is "nuanced" and noting that the
standard of review differs between the issues of equitable tolling (de novo) and equitable

of the statute of limitations. If an opt-in plaintiff can establish excusable ignorance of the limitations period and a lack of prejudice to the defendant, that plaintiff may be able to equitably toll the statute of limitations. *See Forester v. Chertoff*, 500 F.3d 920, 929 (9th Cir. 2007). In the event an opt-in plaintiff discovers facts that establish that Defendants' wrongful conduct prevented that plaintiff from filing suit, that plaintiff may be able to equitably toll the statute of limitations. *See Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1009 (9th Cir. 2011). The potential application of either doctrine leads the Court to conclude that a more inclusive statute of limitations should be used in this case.

As a result, the Court agrees with Plaintiffs that a notice period beginning on October 9, 2010 is appropriate because of the potential that an opt-in plaintiff may prove Defendants willfully violated the FLSA and because facts supporting an equitable extension of the statute of limitations are not usually known until an individual putative member opts-in and confers with collective counsel. *See Margulies*, 2013 WL 5593040, at *19 (permitting a three-year time period because "discovery may show that at least certain plaintiffs may be eligible for equitable tolling and  that [defendant] acted willfully in violating the FLSA"); *Davis v. Westgate Planet Hollywood Las Vegas, LLC*, 2009 WL 102735, at *14 (D. Nev. Jan. 12, 2009) (permitting a notice period beginning three years of the date of filing of the complaint); *Castillo v. P & R Enters., Inc.*, 517 F. Supp. 2d 440, 449 (D.D.C. 2007) (same).

### 2.  Content of the Notice

Defendants argue that Plaintiffs' proposed notice is misleading. Defendants request that the Court: (a) require Defendants' counsel's name and information be included in the notice; (b) revise portions of text of the proposed notice to make clear that recovery is not certain; and

---

estoppel (abuse of discretion)). Moreover, the Court's application of the equitable estoppel doctrine, *see infra* Section C, is not based on Defendants' alleged wrongful conduct.

(c) provide notice that collective members may be asked to testify and provide information

regarding the pertinent facts and individual alleged damages.

With respect to the inclusion of Defendants' counsel's name, Defendants argue that

putative collective members that have evidence contradicting Plaintiffs' claims should be

informed of whom to call with that information. The purpose of the notice and opt-in process is

separate from the discovery that may occur in this matter. Specific to the notice process,

Defendants' counsel will play no "role in managing the distribution of the notice or the gathering

consent forms," and thus including contact information for Defendants' counsel "only creates the

potential for confusion of those who receive the notice." *See Cryer v. Intersolutions, Inc.*, 2007

WL 1053214, at *3 (D.D.C. Apr. 7, 2007). Courts in this circuit have similarly held that

requiring the inclusion of defense counsel's name is without a basis in either law or logic. *See*

*Adams*, 242 F.R.D. at 541; *Morden*, 2006 WL 2620320, at *4. The Court rejects Defendants'

proposal to include Defendants' counsel's contact information.

Defendants also propose to alter the text of the proposed notice to clarify that recovery is

not certain in this case. They propose three relevant alterations:

- On the second page of the proposed notice in the "What happens if I join this

  lawsuit" section, Plaintiffs' proposed text provides: "If you join the lawsuit, you

  will share in any benefits from a settlement or judgment, and also be bound by

  any decisions or rulings in the case." Pls.' Mot. at 8, Dkt. 12. Defendants propose

  an alternative notice form and the following text: "You will be bound by any

  decisions or rulings in the case, whether or not they are favorable." Fjelstad Decl.

  Ex. C at 9, Dkt. 24.

- The section titled "What happens if I don't join this lawsuit?" provides: "If you don't join the lawsuit, you will not receive any money or other benefits from a settlement or judgment, and you will not be covered by any decisions or rulings in the case." Pls.' Mot. at 8, Dkt. 12. Defendants propose the following text, in part, to make clear recovery is not certain: "If you don't join the lawsuit, you will not be covered by any decisions or rulings in this case." Fjelstad Decl. Ex. C at 10, Dkt. 24.

- On page three of the proposed notice in the "How will the lawyer get paid?" section, the proposed notice provides: "If the Plaintiffs do not win the case, you will not have to pay any attorney fees or costs." Pls.' Mot. at 9, Dkt. 12. Defendants propose the following: "Collective counsel will be paid for their attorney fees and costs only if the Plaintiffs win and recover some money. Court filing and administrative fees may be required to be paid by the Plaintiffs." Fjelstad Decl. Ex. C at 10, Dkt. 24.

Plaintiffs' did not respond to Defendants' objection on these three points. The Court finds that informing putative collective members that any award is predicated on a favorable decision is reasonable. Thus, the Court orders that Plaintiffs use the following revised text, encompassed in the attached revised notice,[3] in order to provide sufficient notice that there will not necessarily be a favorable ruling in the case:

---

[3] In addition to the Court's edits described within this Opinion, the Court also corrected several scriveners' errors within Plaintiffs' proposed notice. Thus, counsel for Plaintiffs should use the attached revised notice and not rely solely on the edits discussed in this Opinion and Order.

PAGE 17 – OPINION AND ORDER

- "What happens if I join this lawsuit" section: "If you join the lawsuit, you will share in the benefits if there is a settlement or judgment, and you will also be bound by any favorable or adverse decisions or rulings in the case."

- "What happens if I do not join this lawsuit?" section: "If you do not join the lawsuit, you will not receive any money or other benefits if there is a settlement or judgment, and you will not be covered by any favorable or adverse decisions or rulings in the case."

Concerning the potential for opt-in plaintiffs to pay Defendants' costs and fees, Plaintiffs' proposed notice only explicitly states that putative collective members are not liable for any of Plaintiffs' attorney's fees or costs. This statement does not disclose the possibility that the Court may require Plaintiffs to pay Defendants' costs if Defendants prevail. *See Adams*, 242 F.R.D. at 540; *see also Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 107 (S.D.N.Y. 2003). The probability of Plaintiffs paying Defendants' costs if Defendants prevail, however, is uncertain. The FLSA only provides for an award of attorney's fees and costs to prevailing *plaintiffs*. 29 U.S.C. § 216(b); *see Stanfield v. First NLC Fin. Servs., LLC*, 2006 WL 3531729, at *1 (N.D. Cal. Dec. 5, 2006). Further, although Rule 54(d) of the Federal Rules of Civil Procedure permits the award of costs other than attorney's fees to a prevailing party, the Court may in its discretion decline to award Defendants such costs, or find that any costs awarded pursuant to Rule 54(d) are taxably only against the original plaintiffs in this action. The uncertain nature of such a fee award is compounded by the risk that this type of notice may provide opt-in plaintiffs with a "disincentive to participate in the lawsuit." *See* Kearns, *The Fair Labor Standards Act* § 19.VI.A.3 at 19-84. Accordingly, the Court rejects Defendants' argument.

Defendants' final request is that putative collective members should be warned that they may have to testify or provide information regarding the case. Plaintiffs object to this proposal and argue that the inclusion of hypothetical discovery obligations is inappropriate in a notice letter. There is a split of authority on this issue, with some courts permitting notice that a putative collective member "may be required to provide information, respond to written discovery, appear for a deposition, and testify in court," and other courts concluding that "such language is dissuasive and should be excluded." Kearns, *The Fair Labor Standards Act* § 19.VI.A.2 at 19-82 to 19-83. Further, depending on the nature of the dispute, district courts have come to different conclusions on whether discovery should be restricted to a representative sampling of a collective action or, instead, include all opt-in collective members. *Id.* at 19.VII.A at 19-118 to 19-119. If after the collective certification is complete and if the collective action itself is compact, some courts have allowed individualized discovery of opt-in plaintiffs. *Id.* at § 19-120.

Defendants request that the notice inform opt-in plaintiffs that they may be "asked to testify and provide information regarding the pertinent facts and individual alleged damages." Defs.' Resp. at 8, Dkt. 23. Defendants' proposed notice includes the following text: "If you join the lawsuit, you may be asked to testify and provide information about the work you performed for the Defendants in order to help the court decide whether you are owed any money." Fjelstad Decl. Ex. C at 10, Dkt. 24. Whether individualized discovery should be included in Plaintiffs' proposed notice depends on how closely this Court analogizes a § 216(b) action to a Rule 23 class action.

Courts analogizing § 216(b) collective actions to Rule 23 class actions note that because individualized discovery is generally not appropriate in a Rule 23 class action, *see Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1202 n.9 (9th Cir. 2008), such discovery should also be

impermissible in a § 216(b) collective action. *See Prentice v. Fund for Pub. Interest Research, Inc.*, 2007 WL 2729187, at *5 (N.D. Cal. Sept. 18, 2007). Even these courts, however, sometimes permit some discovery in the form of representative depositions and written interrogatories or questionnaires. *See Adkins v. Mid-Am. Growers, Inc.*, 143 F.R.D. 171, 174-75 (N.D. Ill. 1992) (explaining the differences between Rule 23 class actions and representative suits under the FLSA and discussing when individualized discovery may be appropriate).

Other courts have noted the distinction between a Rule 23 class action and a § 216(b) collective action—namely that plaintiffs "opt-in" to a collective action, s*ee McElmurry*, 495 F.3d at 1139, and that the requirements of collective certification are less stringent than Rule 23, *see Dickerson*, 2013 WL 6178460, at *2 n.5. Moreover, in situations where the joinder of additional parties or potential decertification was at issue, courts have found that individualized discovery is essential and required. *See Brooks v. Farm Fresh, Inc.*, 759 F. Supp. 1185, 1187-88 (E.D. Va. 1991) (court had allowed individualized discovery until the record was sufficiently developed for the determination of whether the plaintiffs were "similarly situated"), *vacated on other grounds*, 966 F.2d 142 (4th Cir. 1992); *Coldiron v. Pizza Hut, Inc.*, 2004 WL 2601180, at *2 (C.D. Cal. Oct. 25, 2004) (analyzing a § 216(b) discovery dispute and citing *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975), for the proposition that "in a situation where the propriety of a class action cannot be determined without discovery, it is an abuse of discretion to deny discovery").

The Court finds that putative collective-action members should be apprised of the possibility that they may be subject to some forms of limited discovery. The Court orders Plaintiffs to include the following text after the first full sentence in the "What happens if I join this lawsuit?" section: "You may have to provide attorneys for Defendants or the Court with

PAGE 20 – OPINION AND ORDER

information about your specific claim." The Court does not determine at this juncture whether it will permit any individualized discovery and will resolve that issue if and when it becomes relevant.

## C. Equitable Tolling for all Potential Collective Members Based on the Discovery Dispute

Plaintiffs request that the Court equitably toll the statute of limitations for all potential opt-in plaintiffs.[4] Equitable tolling serves to extend an applicable limitations period. *See Lukovsky v. City and Cnty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008). Equitable tolling "focuses on whether there was excusable delay by the plaintiff: If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (citation and quotation marks omitted). Thus, "the doctrine applies 'in situations where, despite all due diligence, [the party invoking equitable tolling] is unable to obtain vital information bearing on the existence of the claim.'" *Hensley v. United States*, 531 F.3d 1052, 1058 (9th Cir. 2008) (quoting *Scoop-Gonzalez v. INS*, 272 F.3d 1176, 1193 (9th Cir. 2001) (en banc)) (alterations in original).

Plaintiffs request that the Court toll the statute of limitations for absent collective members. Defendants did not directly object to this request. Defendants did, however, in response to the proposed notice period, assert that the statute of limitations begins to run when a putative opt-in plaintiff's cause of action accrues and continues to run until his or her consent form is filed with the Court. Plaintiffs argue that equitable tolling is warranted in this case

---

[4] Plaintiffs' request is separate and apart from any individual equitable modification of the statute of limitations or extension of the statute of limitations based on Defendants' willful violation of the FLSA.

because they made a request for the putative class members' information in February of 2014. Rather than produce that information, Defendants argued they were not obligated to do so and, as a result, Plaintiffs brought a motion to compel. The Court granted the portion of Plaintiffs' motion to compel seeking the names of putative collective members to which Defendants had access. *See* Dkt. 32.

As noted in *Margulies*, courts are generally split on the issue of whether a defendant's refusal to provide contact information for potential opt-in plaintiffs is a sufficient reason to equitably toll the statute of limitations. 2013 WL 5593040, at *17-18 (collecting cases). In that case, Judge Papak concluded that the statute of limitations should not be equitably tolled before conditional collective certification because, before that point, the defendant had no obligation to produce the information. *Id.* at *18. Other courts have found that, even though defendants' obligation to provide potential plaintiffs' contact information may occur after conditional certification, applying equitable tolling counters any advantage defendants would otherwise gain by withholding potential plaintiffs' contact information until the last possible moment. *See Adams*, 242 F.R.D. at 543.

The Court finds that the nature of this case creates an extraordinary set of circumstances. In particular, and unlike a Rule 23 class action, the action for opt-in plaintiffs is not commenced and the statute of limitations continues to run until the individual opt-in plaintiff files the consent form with the Court. *See* 29 U.S.C. § 256(b). Moreover, this process may take longer when there are pre-certification discovery disputes. This potentially affects the availability of damages. Because the May 29, 2014 ruling from the Court found that the requested contact information was relevant, Defendants were and are now obligated to produce the requested contact information. Even if Defendants did not engage in wrongful conduct in denying the requested

contact information, the course of discovery in this case and FLSA collective actions generally function to bar putative opt-in collective plaintiffs from damages they otherwise may have been eligible to receive through no fault of their own. Thus, the Court finds that the extraordinary circumstances of this case warrant equitably tolling the statute of limitations for putative opt-in collective action plaintiffs beginning February 12, 2014.

## CONCLUSION

For the reasons discussed above, Plaintiffs' Motion for Preliminary Collective Certification, Discovery of Collective Members' Contact Information, and for Issuance of Court-Authorized Notice, Dkt. 12, is GRANTED IN PART and DENIED IN PART. The Court hereby ORDERS:

1. Pursuant to the FLSA, the Court makes the preliminary finding that all employees of Butler Investments, Inc. and Canby Pub & Grill from October 9, 2010 to present are similarly situated. The Court conditionally certifies this action as a representative collective action under 29 U.S.C. § 216(b).

2. The Court appoints Jon M. Egan, P.C. as counsel for the collective action.

3. Defendants shall produce the names, last known addresses, telephone numbers, and email addresses for all employees of Butler Investments, Inc. and the Canby Pub & Grill who received any paycheck on or after October 9, 2010 within fourteen (14) days of this Order.

4. The parties are directed to confer regarding the attached revised notice. If either party has any objection to the revised notice, such party is directed to contact the Court within five (5) days of the date of this Order. If there is no objection to the revised notice, Plaintiffs shall mail the revised notice to all potential Plaintiffs no later than ten (10) days following Defendants' disclosure of the contact

information. Potential Plaintiffs have sixty (60) days to opt-in to the collective

action.

**IT IS SO ORDERED**.

DATED this 28th day of July, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge