IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| NEONA CHASTAIN, JANIE HAHN, PATRICIA HARRIS, LISA PAYTON, and JILL TOWNSEND, individually and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>ANTONIA CAM, GEORGI CAM, and BUTLER INVESTMENTS, INC., d/b/a Canby Pub & Grill,<br><br>    Defendants. | Case No. 3:13-cv-01802-SI<br><br>OPINION AND ORDER ON CERTIFICATION AND DECERTIFICATION MOTIONS |

Jon M. Egan, JON M. EGAN, P.C., 547 Fifth Street, Lake Oswego, OR 97034. Of Attorneys for Plaintiffs.

Eric J. Fjelstad, SMITH & FJELSTAD, 722 N. Main Avenue, Gresham, OR 97030. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

   Plaintiffs Neona Chastain, Janie Hahn, Patricia Harris, Lisa Payton, and Jill Townsend

(collectively "Plaintiffs") bring this action on behalf of themselves and other similarly situated

individuals against Defendants Antonia Cam, Georgi Cam, and Butler Investments, Inc.

(collectively "Defendants") for alleged violations of the Fair Labor Standards Act ("FLSA"),

29 U.S.C. §§ 201-219, and other federal and state lawa. On July 28, 2014, the Court granted

preliminary collective certification under 29 U.S.C. § 216(b) ("§ 216(b)") of the FLSA. Presently

before the Court are Plaintiffs' motion to certify a class under Federal Rule of Civil Procedure 23

("Rule 23") and Defendants' motion to decertify the collective action. For the reasons discussed

below, the Court grants Plaintiffs' motion and denies Defendants' motion.

## STANDARDS

### A.  Rule 23 Class Certification

Class actions are governed by Rule 23. Under Rule 23, the plaintiff "must be prepared to

prove" that each of the requirements of Rule 23 is satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 131

S. Ct. 2541, 2551 (2011). Rule 23 sets forth more than a "mere pleading standard." *Id.* On the

other hand, Rule 23 provides district courts with broader discretion to certify a class than to deny

certification. *See Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956 (9th Cir. 2013).

A party seeking class certification must first satisfy each of the requirements of

Rule 23(a). *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013). Under Rule

23(a), a district court may certify a class only if:

> (1) the class is so numerous that joinder of all members is
> impracticable; (2) there are questions of law and fact common to
> the class; (3) the claims or defenses of the representative parties
> are typical of the claims or defenses of the class; and (4) the
> representative parties will fairly and adequately protect the
> interests of the class.

Rule 23(a). In other words, a proposed class must meet the requirements of numerosity,

commonality, typicality, and adequacy of representation. *Mazza v. Am. Honda Motor Co.*, 666

F.3d 581, 588 (9th Cir. 2012). Rule 23 also requires, implicitly, that the members of the proposed

class be objectively ascertainable. *Ott v. Mort. Inv'rs Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046,

1064 (D. Or. 2014).

In addition to the requirements of Rule 23(a), the party seeking to maintain a class action must "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). The provision at issue here is Rule 23(b)(3), "an 'adventuresome innovation' of the 1966 [class-action] amendments." *Wal-Mart*, 131 S. Ct. at 2558 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). Compared to the other provisions of Rule 23(b), Rule 23(b)(3) "allows class certification in a much wider set of circumstances but with greater procedural protections." *Id.* To protect the individual interests of class members, "the (b)(3) class is not mandatory; class members are entitled to receive 'the best notice that is practicable under the circumstances' and to withdraw from the class at their option." *Id.* (quoting Rule 23(c)(2)(B)).

Rule 23(b)(3) requires a court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." This analysis, in accord with Rule 23's "principal purpose" of "promot[ing] efficiency and economy of litigation," inquires into "the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Abdullah*, 731 F.3d at 964 (quotation marks omitted). The focus of this inquiry, however, is on "common questions"—plaintiffs need not, at this threshold, "prove that the predominating question[s] will be answered in their favor." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1196 (2013) (emphasis omitted).

The Rule 23 analysis is "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 131 S. Ct. at 2551 (quotation marks omitted); *Comcast*, 133 S. Ct. at 1432. Nevertheless, Rule 23 "grants courts no license to engage in free-ranging

merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at 1195, 1196 (emphasis in

original). "Merits questions may be considered to the extent—but only to the extent—that they

are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."

*Id.* at 1195.

## B.  FLSA Collective Action Certification

The FLSA permits an employee to bring a collective action on behalf of herself and other

"similarly situated" employees based on allegations that an employer failed to pay the federal

minimum hourly wage and an overtime rate of one and one-half times the regular pay rate for

hours worked over 40 hours in a week. § 216(b).[1] The FLSA does not define the term "similarly

situated," and neither the Supreme Court nor the Ninth Circuit has articulated a controlling test.

*Margulies v. Tri-Cty. Metro. Transp. Dist. of Or.*, 2013 WL 5593040, at *15 (D. Or. Oct. 10,

2013); *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 470 (E.D. Cal. Mar. 5, 2010)

(collecting cases).

The majority of courts apply a two-step analysis to determine whether the potential

plaintiffs are similarly situated. *See Margulies*, 2013 WL 5593040, at *15; *see also Thiessen v.

Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) (finding that the district court

did not err in adopting the two-step approach). The first step involves the court making an

"initial 'notice stage' determination of whether plaintiffs are 'similarly situated.'" *Thiessen*, 267

F.3d at 1102 (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)).

This determination involves "'nothing more than substantial allegations that the putative

---

[1] A "collective action" differs from a class action under Rule 23 because the putative
plaintiff in a collective action "must opt *into* the suit by 'giv[ing] his consent in writing.'"
*McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007) (alteration and
emphasis in original) (quoting § 216(b)); *see Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d
525, 528 (9th Cir. 2013). In contrast, a class action under Rule 23 binds all class members unless
they "opt *out* of the suit." *McElmurry*, 495 F.3d at 1139.

[collective] members were together the victims of a single decision, policy, or plan.'" *Id.* (quoting *Bayles v. Am. Med. Response of Colo., Inc.*, 950 F. Supp. 1053, 1066 (D. Colo. 1996)); *see Margulies*, 2013 WL 5593040, at *15 (same). Courts "generally do not evaluate the merits of the claims or make credibility determinations at the conditional certification stage." 2 *The Fair Labor Standards Act* § 17.III.B.1 (Ellen C. Kearns et al. eds., 3d ed. 2015) (footnotes omitted); *see Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 538 (N.D. Cal. 2007) (declining to resolve a dispute between competing affidavits at the first-step analysis stage for FLSA collective certification).

The second step in a FLSA collective certification typically occurs after discovery is complete, at which time the defendants may move to decertify the class. *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004). At the second step, a court must review "several factors, including the specific employment conditions and duties of the individual plaintiffs, any defenses asserted by or available to the defendant which appear to be individual to each plaintiff, fairness and procedural considerations, and whether the plaintiffs made any required filings before instituting suit." *Morden v. T–Mobile USA, Inc.*, 2006 WL 2620320, at *2 (W.D. Wash. Sept. 12, 2006) (citing *Thiessen*, 267 F.3d at 1103). "The district court has discretion to determine whether a collective action is appropriate." *Goudie v. Cable Commc'ns, Inc.*, 2008 WL 4628394, at *4 (D. Or. Oct. 14, 2008).

The Supreme Court has recently assumed, without deciding, that "the standard for certifying a collective action under the FLSA is no more stringent than the standard for certifying a class under the Federal Rules of Civil Procedure." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). Many lower courts have held that Rule 23 imposes a greater burden on the party seeking certification than the "similarly situated" requirement of 29 U.S.C. § 216(b).

*See, e.g.*, *Monroe v. FTS USA, LLC*, 2016 WL 814329, at *5 (6th Cir. Mar. 2, 2016) ("Based on our precedent, then, the FLSA's 'similarly situated' standard is less demanding than Rule 23's standard."); *Troy v. Kehe Food Distribs., Inc.*, 276 F.R.D. 642, 649 (W.D. Wash. 2011) (stating that the second-step of the collective action analysis is "'considerably less stringent than the requirement of Rule 23(b)(3) that common questions predominate'" (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)). Therefore, if certification of a plaintiff's class action under Rule 23 is proper, certification of the collective action is proper as well. *See Tyson Foods*, 136 S. Ct. at 1045.

## BACKGROUND

Plaintiffs allege the following facts in support of their motion for Rule 23 class certification and in opposition to Defendants' motion to decertify the collective action. Defendants in this case are all current or former owners of the Canby Pub & Grill located in Canby, Oregon. Defendant Butler Investments, Inc. ("Butler") is an Oregon corporation owned by Thomas Joseph Butler III. Butler operated the Canby Pub & Grill until mid-2011 on land owned by Defendants Antonia and Georgi Cam (collectively "the Cams"). In approximately May of 2011, the Cams bought and began operating the Canby Pub & Grill from Butler. The Cams have used various corporate names and identities throughout their ownership and involvement with Plaintiffs in this matter.

Defendants employed Plaintiffs at the Canby Pub & Grill as nonexempt hourly employees. During Plaintiffs' employment, Defendants required them to perform work before clocking in and after clocking out of the timekeeping system, and Defendants never compensated Plaintiffs for this work. Moreover, Plaintiffs who clocked in more than five minutes before their scheduled shifts, forgot to clock out, or clocked out "too long" after the last customer paid his or her bill found Defendants automatically deducting time off of Plaintiffs' paychecks through

Defendants' point-of-sale system (also referred to as "time shaving"). Defendants also did not compensate Plaintiffs for breaks of fewer than 30 minutes and failed on occasion to pay Plaintiffs on their regular paydays. Plaintiffs allege that as a result of Defendants' deductions and practices, Plaintiffs received less than the applicable federal and state minimum wage and, for weeks where Plaintiffs worked more than 40 hours, less than the required time-and-a-half for overtime. According to Plaintiffs, the policies described above were applied to all Canby Pub & Grill employees. Specifically, adjustments made by Defendants' point-of-sale system were uniformly applied to all employees. In support of these allegations, Plaintiffs supply their declarations, the declaration of their counsel Jon Egan, and statements from Defendants' payroll account showing that Defendants occasionally did not deposit sufficient funds to cover payroll until after payday.

Other policies specifically applied to front-of-the-house ("FH") employees (including Neona Chastain, Janie Hahn, Patricia Harris, and Lisa Payton) who interacted with customers rather than to kitchen staff or back-of-the-house ("BH") employees (including Jill Townsend). Defendants required the FH employees to purchase uniforms, nametags, pens, crayons, and lighters for use on the job at their own expense and on their own time. Defendants also required FH employees nightly to launder their uniforms at their own expense and on their own time. Further, FH employees had to pay for any shortages resulting from errors in credit and debit transactions and "dine-and-dash" customers. Defendants either deducted these fees directly from FH employees' paychecks without prior written permission or required them to pay those amounts in cash at the end of their shifts. Payment of these expenses reduced FH employees' wages below the federal and state minimum wage and caused some employees to receive less

than the required pay for hours worked in excess of 40 hours per week. In support of these allegations, Plaintiffs submit declarations from the plaintiffs who worked as FH employees.

## DISCUSSION

### A. Rule 23(a)

Plaintiffs argue that the proposed class, with its two subclasses, satisfies all of the elements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Defendants argue that Plaintiffs' proposed class does not satisfy any of the Rule 23(a) requirements. The Court addresses each requirement in turn.

#### 1. The Proposed Class

Plaintiffs propose a class "consisting of all employees of Butler Investments, Inc. and/or Canby Pub & Grill from October 9, 2007 to present, and appointing Jon M. Egan, P.C. as counsel for the class."[2] In their opposition to Defendants' motion, Plaintiffs concede that some claims applicable to FH employees do not apply to BH employees. These claims relate to payments for pens, crayons, and lighters; uniform laundering; and deductions for transactional errors and dine-and-dash customers. Therefore, Plaintiffs propose two subclasses: one for FH employees and one for BH employees.[3] Nonetheless, Plaintiffs assert that Defendants' policies

---

[2] Plaintiffs' Motion to Certify Rule 23 Class, Dkt. 118 at 1.

[3] In their reply in support of their motion to certify a Rule 23 class, Plaintiffs further acknowledge that Defendants may have treated some FH employees (servers) differently from others (bartenders and hosts) in that only servers had to pay for credit card mistakes, "dine-and-dashes," pens, crayons, lighters, and nametags. Dkt. 137 at 3. Nonetheless, the main question specific to FH employees is the same: whether Defendants required FH employees to pay out-of-pocket expenses (including for uniforms) that resulted in class members receiving less than minimum wage and required overtime rates in violation of federal and state law. The Court notes that Plaintiffs' description of FH employees in their reply brief is inconsistent with the description of FH employees in their response to Defendants' motion to decertify. *See* Dkt. 128 at 2 ("[F]ront-of-the-house employees will have claims for pens/crayons/lighters, uniform laundering, and credit card/dine-and-dash deductions, while back-of-the-house employees will not.").

and procedures regarding late paychecks, time shaving, nonpayment of breaks less than 30 minutes long, and off-the-clock work applied to all employees and that therefore both subclasses may assert claims based on these policies and procedures.[4]

### 2. Numerosity

Rule 23(a)(1) requires Plaintiffs to demonstrate that the proposed class "is so numerous that joinder of all members is impracticable." Rule 23(a)(1) provides no bright-line test or minimum number of class members necessary to meet the numerosity requirement; instead, the court must evaluate the specific facts of each case. *Gen. Tel. Co. of the Nw., Inc. v. Equal Emp't Opportunity Comm'n*, 446 U.S. 318, 330 (1980). In general, classes of 15 members or fewer are too small, and classes of 16 to 39 members may or may not be sufficiently numerous, depending on the facts of the case. *Id.* In this district, there is a "rough rule of thumb" that 40 class members is sufficient to meet the numerosity requirement. *Giles v. St. Charles Health Sys., Inc.*, 294 F.R.D. 585, 590 (D. Or. 2013); *see also Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (same); 1 *McLaughlin on Class Actions* § 4:5 (12th ed.) ("The rule of thumb adopted by most courts is that proposed classes in excess of 40 generally satisfy the numerosity requirement.").

To determine whether the numerosity requirement is met, a court may, in addition to the number of potential class members, consider:

> the ease of identifying and contacting class members; . . . the geographical spread of class members; and . . . the ability and willingness of individual members to bring claims, as affected by their financial resources, the size of the claims, and their fear of retaliation in light of an ongoing relationship with the defendant.

---

[4] Plaintiffs seek class certification only for their wage-and-hour claims, not their individual claims for retaliation, discrimination under federal and state law, wrongful discharge, intentional interference with economic relations, and intentional infliction of emotional distress.

*Twegbe v. Pharmaca Integrative Pharmacy, Inc.*, 2013 WL 3802807, at *2 (N.D. Cal. July 17, 2013); *see also Rannis*, 380 F. App'x at 651 (noting that the numerosity inquiry involves considering whether separate lawsuits may clog the court's docket or impose "unnecessary financial burdens on class members"); William B. Rubsenstein, *Newberg on Class Actions* § 3:12 (5th ed.) (noting that "[c]ourts considering certification of classes numbering in the gray area between 20 and 40 are guided by a series of impracticality factors," which include "judicial economy . . . , geographic dispersion of class members, size of individual claims, financial resources of class members, and the ability of claimants to institute individual suits").

Here, Plaintiffs' evidence shows that the proposed class meets the threshold number of 40 class members. There are five named plaintiffs. Eleven plaintiffs opted into the case after preliminary certification of the collective action. At least 91 employees worked for Defendants during the proposed time period for the class, and at least 72 employees worked for Defendants during the time that Defendants' bank records show that employees may have received their paychecks late. Plaintiffs do not have more detailed records regarding the number of employees at Canby Pub & Grill between 2007 and 2009 because Defendants deleted some of these records as discovered by Plaintiffs' computer forensics expert.[5] In ruling on class certification, a court may draw inferences against a defendant found to have destroyed evidence. *See Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 566 n.6 (W.D. Wash. 2012) ("[I]t would be unfair to deny class certification because of the potential difficulty of identifying the class members where that difficulty is mostly due to the fact that [a defendant] destroyed the call lists that it used."). In this case, the Court presumes that the deleted files would have shown additional class members.

_____

[5] *See* Court's Order Regarding Spoliation, Dkt. 104 at 1.

Plaintiffs concede that the evidence supports dividing the class into two subclasses. Generally, if a court divides a class into subclasses, the court must find that the subclasses independently meet all Rule 23(a)'s requirements. *See Bates v. United Parcel Serv.*, 204 F.R.D. 440, 443 (N.D. Cal. 2001); *Newberg on Class Actions* § 3:16 (footnotes omitted) ("When a party or a court seeks to create subclasses, it is generally settled that each subclass must independently satisfy each of the Rule 23 criteria."). Of the 91 identified class members, at least 47 were FH employees. The remaining 44 employees were presumably BH employees. Again, the Court draws this inference in favor of Plaintiffs and against Defendants because of the Court's October 14, 2015 Order regarding spoliation. Thus, the Court finds that both subclasses meet the threshold of 40 class members.

Plaintiffs further argue that the class meets the numerosity requirement because employees may be reluctant to bring individual lawsuits for fear of retaliation by Defendants. Courts have found Rule 23's numerosity requirement satisfied "because, where some class members are still employed by the defendant, 'concern regarding employer retaliation or reprisal renders individual joinder less practicable.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011) (quoting *Sanft v. Winnebago Indus., Inc.*, 214 F.R.D. 514, 524 (N.D. Iowa 2003)); *Newberg on Class Actions* § 3:12 ("Fear of retaliation—in, for example, civil rights or employment cases—is an additional factor that occasionally argues for relaxing the numerosity requirement generally . . . ."). To show that employees fear retaliation or reprisal, Plaintiffs submit the declaration of opt-in plaintiff Kaye Reich ("Ms. Reich"). Ms. Reich is a former employee of Canby Pub & Grill and offers hearsay testimony that Canby Pub & Grill customers mentioned in this litigation have received threatening letters from the Cams. Ms. Reich also asserts that "there are other former employees who do not want to opt in because

they are afraid of the Cams and don't want to do anything to make them angry at them."[6] Ms. Reich's testimony regarding the fears of other former employees is speculative and gives the Court little information regarding whether *current* employees may be too fearful of retaliation to bring suit against Defendants. Nonetheless, because the proposed class includes current employees, the Court considers fear of retaliation a factor that weighs in favor of finding that joinder is impracticable.

Finally, the named plaintiffs each seek between $1,000 and $3,000 in unpaid wages. Members of the putative class may have damages for less than this amount. In considering whether joinder is practicable, a court may consider the amount of individual damages. The Ninth Circuit has suggested that damages of $600 may be too little to incentivize individual class members to bring their own claims. *See Rannis*, 380 F. App'x at 651. Because Plaintiffs allege small amounts of individual damages for unpaid breaks of less than 30 minutes, time shaving, and out-of-pocket expenses for inexpensive items such as crayons, some class members might very well have damages for as little as $600 or less. Many of the proposed class members worked for minimum wage, and all worked as employees of a local pub in a small town. Few of these employees are likely to have resources to hire a lawyer to litigate small claims. Defendants, as the owners of Canby Pub & Grill, likely have more resources than the individual employees and have also demonstrated their willingness to obstruct discovery. Given these facts, the financial burden of bringing individual suits also weighs in favor of finding that joinder is impracticable.

Because the proposed class and subclasses consist of more than 40 members, current employees may fear retaliation if they bring individual lawsuits, and individual suits may impose

---

[6] Dkt. 120 ¶ 2.

undue financial burdens on potential class members, the Court finds that joinder is impracticable. Therefore, Plaintiffs have satisfied the numerosity requirement of Rule 23(a)(1).

### 3. Commonality

Rule 23(a)(2) states that class certification is appropriate only when the case presents "questions of law or fact common to the class." In order to satisfy the commonality requirement, Plaintiffs must show that the class members suffered the "same injury"—that their claims depend upon a "common contention." *Wal-Mart*, 131 S. Ct. at 2551 (quotation marks omitted). "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* But class members need not have *every* issue in common: Commonality requires only "a single significant question of law or fact" in common. *Mazza*, 666 F.3d at 589; *see also Wal-Mart*, 131 S. Ct. at 2556.

Here, Plaintiffs and putative class members worked or currently work for the same employer. Plaintiffs allege that Defendants subjected all putative class members to the same policies and procedures regarding late paychecks, time shaving, nonpayment of breaks less than 30 minutes long, and off-the-clock work. Plaintiffs further allege that Defendants subjected all (or substantially all) FH employees to the same policies and procedures regarding payments for pens, crayons, and lighters; uniform laundering; and deductions for transactional errors and dine-and-dash customers. In their depositions, Plaintiffs explain that their jobs as FH or BH employees required them to perform tasks that could not be completed during the time that Defendants allowed them to be on the clock.[7] This policy, along with the Defendants' other

---

[7] *See* Jill Townsend's Depo., Dkt. 126 at 16-17; Lisa Payton's Depo., Dkt. 126 at 47; Patricia Harris's Depo., Dkt. 126 at 82, 84; Defendants' Motion to Decertify Collective Action, Dkt. 121 at 5-6.

alleged policies such as time shaving, resulted in employees being paid below federal and state minimum wage rates or overtime rates.

Defendants respond that Plaintiffs have already been paid for most of the time shaved off of their time sheets, which differentiates the named plaintiffs from potential class members. Additionally, argue Defendants, the amounts of claimed out-of-pocket expenses, time worked off the clock, and overtime varies between the named plaintiffs. According to Defendants, these variations show that Plaintiffs cannot meet the commonality requirement of Rule 23(a)(2).

To satisfy the commonality requirement, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). As the Court discussed in its Opinion and Order regarding preliminary collective certification, the fact that the named plaintiffs may have limited damages against Defendants with respect to time shaving is immaterial to the question whether Defendants subjected class members to a "single illegal policy, plan or decision." *Leuthold*, 224 F.R.D. at 468. Regardless of Plaintiffs' actual damages, there exists a common core of salient facts regarding time shaving. The common question whether Defendants had a policy of time shaving will likely drive the resolution of the case for the named plaintiffs and other class members.

Similarly, regardless of the number of hours for which Defendants failed to compensate Plaintiffs, Plaintiffs raise questions common to all members of the proposed class action. These questions include whether Defendants had a policy and practice of paying employees late, requiring employees to work off the clock, and discouraging reporting overtime; and whether Defendants knew or should have known that the class was working for below minimum wage or working unpaid overtime, which Plaintiffs allege will be shown through testimony that the Cams

were frequently at the restaurant when such work was occurring. Resolution at trial of these common questions—whether in favor of the class or in favor of Defendants—will tend to show whether Defendants are liable under federal and state wage-and-hour laws. These questions contain the "glue" necessary to say that "examination of all the class members' claims for relief will produce a common answer to the crucial question[s]" raised by Plaintiffs' complaint. *Wal-Mart*, 131 S.Ct. at 2552; *see Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1166 (9th Cir. 2014). This is all that the commonality prong requires, and the Court therefore finds that Plaintiffs satisfy Rule 23(a)(2).

### 4. Typicality

In order to meet the typicality requirement, Plaintiffs must show that the named parties' claims or defenses are typical of the claims or defenses of the class. Under the "permissive standards" of Rule 23(a)(3), the "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). In order to determine whether claims and defenses are typical, courts look to "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quotation marks and citation omitted); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

According to Defendants, they will argue that Plaintiffs have failed to establish the elements of an FLSA claim. This defense, argue Defendants, is individual to each plaintiff. The elements of an FLSA claim include: (1) the plaintiff must have performed "work"; (2) the plaintiff must have been "employed," *i.e.*, "suffered" or "permitted" to do "work" about which

the employer knew or should have known; and (3) the "work" must have been "actually, rather than theoretically, compensable," *i.e.*, "reasonable in relation to the principal activity and not *de minimis*." *Espinoza v. Cty. of Fresno*, 290 F.R.D. 494, 501 (E.D. Cal. 2013) (quoting *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) (quotation marks omitted); *see also* 29 U.S.C. § 203(g) ("'Employ' includes to suffer or permit to work."). Defendants argue that Plaintiffs cannot establish the second and third elements because Defendants did not have actual or constructive notice that each employee was performing work for which she was not compensated and the work was *de minimis*.

Defendants' notice and *de minimis* defenses are not so individualized that a class action would deprive Defendants of the opportunity fairly to litigate these defenses. Plaintiffs argue that Defendants had constructive notice of all hours worked by employees based on Defendants' constant presence at the restaurant, refusal to appoint a manager to track hours, and specific instructions to Plaintiffs not to record certain time. Both parties' arguments regarding notice relate to systematic policies that can be proven or disproven at trial for all employees in a class action. Similarly, Plaintiffs argue that Defendants' *de minimis* defense fails either because the time in question was recorded or because Defendants instructed employees not to record the time. Again, both parties' arguments regarding the *de minimis* defense relate to systematic policies that can be proven or disproven at trial on a class-wide basis.

Moreover, Plaintiffs offer declarations stating that Defendants applied their policies and practices uniformly.[8] Defendants required all employees to sign notices of new rules—such as the requirement not to clock in more than five minutes before or ten minutes after a shift. Defendants' point-of-sale computer system also applied Defendants' settings to all employees in

_____

[8] *See* Dkt. 14.

the same way. Plaintiffs assert that they have the same or similar injuries as all class members: late paychecks and denial of federal and state minimum wage and overtime rates. The precise ways in which particular class members may have been denied minimum wage or overtime payments may differ, but the alleged injuries are substantially the same. Accordingly, the Court finds that Plaintiffs have satisfied the typicality requirement of Rule 23(a)(3).

### 5.    Adequacy of Representation

Rule 23(a)(4) states that before a class can be certified, a court must find that "the representative parties will fairly and adequately protect the interests of the class." This requirement turns on two questions: (1) whether "the named plaintiffs and their counsel have any conflicts of interest with other class members"; and (2) whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020. The adequacy requirement is based on principles of constitutional due process; accordingly, a court cannot bind absent class members if class representation is inadequate. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940); *Hanlon*, 150 F.3d at 1020.

Plaintiffs submit the declaration of their counsel Mr. Egan detailing his credentials. These credentials include litigating numerous wage-and-hour disputes, many of which went forward as class actions.[9] Defendants do not dispute any of these credentials, nor do Defendants argue that any conflicts of interest exist between Plaintiffs and Mr. Egan or between class members. Accordingly, the Court finds that Plaintiffs and Mr. Egan will prosecute the action vigorously on behalf of the proposed class and that Plaintiffs have satisfied Rule 23(a)(4).

---

[9] Dkt. 119 ¶ 6.

**B. Rule 23(b)(3)**

Having found that Plaintiffs satisfy all of the requirements of Rule 23(a), the Court

analyzes whether Plaintiffs also meet the requirements of Rule 23(b)(3). In determining whether

a case satisfies the predominance and superiority requirements of Rule 23(b)(3), factors to

consider include:

> (A) the class members' interests in individually controlling the
> prosecution or defense of separate actions; (B) the extent and
> nature of any litigation concerning the controversy already begun
> by or against class members; (C) the desirability or undesirability
> of concentrating the litigation of the claims in the particular forum;
> and (D) the likely difficulties in managing a class action.

Rule 23(b)(3).

**1. Predominance of Common Questions**

"[T]here is substantial overlap between" the test for commonality under Rule 23(a)(2)

and the predominance test under 23(b)(3). *Wolin*, 617 F.3d at 1172. The predominance test,

however, "is 'far more demanding,' and asks 'whether proposed classes are sufficiently cohesive

to warrant adjudication by representation.'" *Id.* (citations omitted) (quoting *Amchem*, 521 U.S. at

623-24). To determine whether common questions predominate, the Court begins with "the

elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S.

Ct. 2179, 2184 (2011).

As discussed above, to establish a claim under the FLSA, Plaintiffs must show that: (1)

they performed "work;" (2) they were "employed," *i.e.*, "suffered" or "permitted" to do "work"

about which the employer knew or should have known; and (3) the "work" was "actually, rather

than theoretically, compensable," *i.e.*, "reasonable in relation to the principal activity and not *de*

*minimis*." *Espinoza*, 290 F.R.D. at 501 (quoting *Forrester*, 646 F.2d at 414). Similarly, Plaintiffs'

state law claims for wage-and-hour violations require Plaintiffs to establish that they were

"employed," meaning "suffer[ed] or permit[ed] to work." ORS § 653.010(2). Plaintiffs' federal and state law wage-and-hour claims also require Plaintiffs to establish that they received less than the applicable minimum wage for the hours they worked or that Defendants failed appropriately to compensate them for hours worked in excess of 40 hours per week.

Defendants do not dispute that all plaintiffs asserting wage-and-hour claims must prove that they were employed by the defendants, that the defendants had notice of their work, that the plaintiffs were under-compensated for their work, and that the claims are not *de minimis*. Additionally, Plaintiffs assert that uniform policies and procedures led to the alleged under-compensation and that Defendants never singled out employees for different treatment. The only factual differences between employees that Defendants identify are between FH employees who interacted with customers and BH employees who did not interact with customers. Plaintiffs have already conceded that these groups of employees may be treated as subclasses. Moreover, despite the differences between FH and BH employees, Plaintiffs assert that all employees were equally subjected to late paychecks, off-the-clock requirements, time shaving, and unpaid breaks.

Defendants also argue that members of the proposed class will have different amounts of damages. Individual damage issues alone, however, do not defeat class certification under Rule 23(b)(3). *Comcast*, 133 S. Ct. at 1437; *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010). Indeed, the Supreme Court has stated that "individualized monetary claims belong in Rule 23(b)(3)." *Wal-Mart*, 131 S. Ct. at 2558. If the finder-of-fact determines that Defendants' are liable for paying employees less than the required wages, objective factors such as payroll records will allow for damage calculations on a class-wide basis. Further, with only 91 class members identified thus far, the Court sees no particular difficulty in determining damages for the proposed class. Accordingly, the Court finds that the proposed class and

subclasses are sufficiently cohesive to warrant adjudication by representation and Plaintiffs have satisfied the predominance requirement.

### 2. Superiority of a Class Action

Rule 23(b)(3)'s superiority requirement tests whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). To make this determination, a court looks to "whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. In turn, this inquiry "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.* The Ninth Circuit recognizes that "[d]istrict courts are in the best position to consider the most fair and efficient procedure for conducting any given litigation, . . . and so must be given wide discretion to evaluate superiority." *Bateman v. Am. Multi–Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) (quotation marks and citations omitted).

This case involves a single employer with consolidated ownership and management. Plaintiffs have not brought a massive, multistate collective action. Rather, all members of the proposed collective action worked at one location and in two job categories. The Court is unaware of any other pending lawsuits involving these issues. Additionally, the parties will conserve judicial resources by litigating all employees' wage-and-hour claims together as the success or failure of these claims turn on common questions of fact and law, such as whether Defendants had a policy and practice of requiring employees to work off the clock. Accordingly, the Court finds that a class action is the most fair and efficient procedure for conducting this litigation.

## CONCLUSION

The Court finds that Plaintiffs have satisfied all requirements of Rule 23(a) and Rule 23(b)(3) and the corresponding—although less stringent—requirements of § 216(b). Therefore, the Court GRANTS Plaintiffs' Motion for Rule 23 Certification of the two subclasses (Dkt. 118) and DENIES Defendants' Motion to Decertify the Collective Action (Dkt. 121). The Court certifies a class consisting of all employees and former employees of Butler Investments, Inc. and/or Canby Pub & Grill from October 9, 2007, to the present, including a first subclass of all front-of-the-house employees during this time period and a second subclass of all back-of-the-house employees during this time period, and appointing Jon M. Egan, P.C. as counsel for the class. Plaintiffs' counsel is directed, after conferring with Defendants' counsel, to file not later than April 25, 2016, a proposed notice, plan and timetable, and budget, consistent with the requirements of Rule 23(c)(2)(B).

**IT IS SO ORDERED**.

DATED this 19th day of April, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge