# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| NEONA CHASTAIN, JANIE HAHN, PATRICIA HARRIS, LISA PAYTON, and JILL TOWNSEND, individually and on behalf of others similarly situated, | Case No. 3:13-cv-01802-SI **OPINION AND ORDER ON SUMMARY JUDGMENT** |
| Plaintiffs, | |
| v. | |
| ANTONIA CAM, GEORGI CAM, and BUTLER INVESTMENTS, INC., d/b/a Canby Pub & Grill, | |
| Defendants. | |

Jon M. Egan, JON M. EGAN, P.C., 547 Fifth Street, Lake Oswego, OR 97034. Of Attorneys for Plaintiffs.

Eric J. Fjelstad, SMITH & FJELSTAD, 722 N. Main Avenue, Gresham, OR 97030. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiffs Neona Chastain ("Chastain"), Janie Hahn ("Hahn"), Patricia Harris ("Harris"),

Lisa Payton ("Payton"), and Jill Townsend ("Townsend") (collectively "Plaintiffs") bring this

action on behalf of themselves and other similarly situated individuals against Defendants

Antonia Cam, Georgi Cam, and Butler Investments, Inc. (collectively "Defendants") for:

PAGE 1 – OPINION AND ORDER

(1) violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219; (2) violations of

Oregon's wage-and-hour laws, Oregon Revised Statutes ("ORS") §§ 652.120, 652.140, 652.610,

653.025, and 653.261; (3) retaliation in violation of federal and state law; (4) racial

discrimination in violation of 42 U.S.C. § 1981 ("§ 1981"); (5) discrimination on the basis of

race, national origin, religion, sexual orientation, sex, and age in violation of ORS § 659A.030;

and (6) wrongful discharge, conversion, intentional interference with economic relations, and

intentional infliction of emotional distress in violation of Oregon state common law. Defendants

move for partial summary judgment on 12 separate grounds. For the reasons discussed below,

Defendants' motion is denied in part and granted in part.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine

dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view

the evidence in the light most favorable to the non-movant and draw all reasonable inferences in

the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257

(9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling

on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of

the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252,

255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for

the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

**BACKGROUND**

Defendants in this case are all current or former owners of the Canby Pub & Grill located in Canby, Oregon. Defendant Butler Investments, Inc. ("Butler") is an Oregon corporation owned by Thomas Joseph Butler III. Butler operated the Canby Pub & Grill until mid-2011 on land owned by Defendants Antonia and Georgi Cam (collectively "the Cams"). In approximately May of 2011, the Cams bought and began operating the Canby Pub & Grill from Butler. The Cams have used various corporate names and identities throughout their ownership and involvement with Plaintiffs in this matter. The Cams are of Russian heritage and members of the Russian Old Believer church. Plaintiffs are neither Russian nor Russian Old Believers.

Defendants employed Plaintiffs at the Canby Pub & Grill as nonexempt hourly employees. Plaintiffs assert that Defendants required them to perform work before clocking in and after clocking out of the timekeeping system and that Defendants never compensated Plaintiffs for this work. Moreover, Plaintiffs assert that if they clocked in more than five minutes before their scheduled shifts, forgot to clock out, or clocked out "too long" after the last customer paid his or her bill, Defendants automatically deducted time off of Plaintiffs' paychecks through Defendants' point-of-sale system (also referred to as "time shaving"). Plaintiffs further assert that Defendants did not compensate Plaintiffs for breaks of fewer than 30 minutes and failed on occasion to pay Plaintiffs on their regular paydays. According to Plaintiffs, as a result of Defendants' deductions and practices, Plaintiffs received less than the applicable federal and state minimum wage and, for weeks where Plaintiffs worked more than 40 hours, less than the required time-and-a-half for overtime. The policies described above, assert Plaintiffs, uniformly applied to all Canby Pub & Grill employees. In support of these allegations, Plaintiffs supply their declarations, the declaration of their attorney Mr. Jon Egan, and statements from

Defendants' payroll account showing that Defendants occasionally did not deposit sufficient funds to cover payroll until after payday.

Plaintiffs state that other policies specifically applied to front-of-the-house ("FH") employees (including Chastain, Hahn, Harris, and Payton) who interacted with customers rather than to kitchen staff or back-of-the-house ("BH") employees (including Townsend). According to Plaintiffs, Defendants required the FH employees to purchase uniforms, nametags, pens, crayons, and lighters for use on the job at their own expense and on their own time. Plaintiffs also assert that Defendants required FH employees nightly to launder their uniforms at their own expense and on their own time. Further, Plaintiffs state that FH employees had to pay for any shortages resulting from errors in credit and debit transactions and "dine-and-dash" customers. Defendants either deducted these fees directly from FH employees' paychecks without prior written permission or required them to pay those amounts in cash at the end of their shifts. Plaintiffs assert that payment of these expenses reduced FH employees' wages below the federal and state minimum wage and caused some employees to receive less than the required pay for hours worked in excess of 40 hours per week. In support of these allegations, Plaintiffs submit declarations from the plaintiffs who worked as FH employees.

In their declarations, Plaintiffs testify that in addition to wage-and-hour violations, Defendants subjected Plaintiffs to a hostile work environment, retaliation, and discriminatory treatment. According to Plaintiffs, Defendant Georgi Cam ("Mr. Cam") frequently consumed alcohol while working at the restaurant, required employees to continue serving severely intoxicated customers in violation of Oregon's liquor serving laws, and sold his own homemade strawberry wine to customers over employees' objections. Plaintiffs also testify that Mr. Cam constantly made sexually-suggestive jokes and comments in front of them and often said "that he

needed younger, prettier girls to help business."[1] Plaintiffs state that sometimes the Cams would tell them not to come in for a shift because business was slow, but then the Cams would give those shifts to Russian Old Believer employees.

On approximately October 29, 2012, the Cams told all employees that the Canby Pub & Grill was closing and that their services were no longer required. Only a few days later, however, the restaurant reopened with a younger FH staff. Plaintiffs were not rehired. Before the closure and rehire, the average age of all employees was 40; after the closure, the average age was 30. Before the closure, the average age of FH employees was 41; after the closure, the average age was 29. According to Plaintiffs, the Cams also gave hiring preferences to Russians who shared the Cams' religion of Russian Old Believer.

## DISCUSSION

Defendants make three motions related to wage-and-hour claims, three motions relating to discrimination claims, one motion relating to retaliation claims, four motions relating to Plaintiffs' common law claims, and one motion relating to the procedures Plaintiffs followed when filing their collective action. The Court addresses each category in turn.

### A. Wage-and-Hour Claims

Defendants argue that they are entitled to summary judgment on Plaintiffs' federal and state wage-and-hour claims on three grounds: (1) Defendants did not have actual or constructive notice that Plaintiffs worked off the clock or had out-of-pocket expenses; (2) any damages for unpaid breaks of less than 30 minutes, time shaving of less than ten minutes, and certain post-shift off-the-clock work is *de minimis*; and (3) Plaintiffs are not entitled to damages for uniform laundering because the uniforms consisted of wash-and-wear material.

---

[1] *See, e.g.*, Chastain Dec., Dkt. 130 ¶ 11.

### 1.  Actual or Constructive Notice

To establish a FLSA claim, a plaintiff must, among other things, establish: (1) she performed "work"; (2) she was "employed," *i.e.*, "suffered" or "permitted" to do "work" about which the employer knew or should have known; and (3) the "work" was "actually, rather than theoretically, compensable," *i.e.*, "reasonable in relation to the principal activity and not *de minimis*." *Espinoza v. Cty. of Fresno*, 290 F.R.D. 494, 501 (E.D. Cal. 2013) (quoting *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) (quotation marks omitted); *see also* 29 U.S.C. § 203(g) ("'Employ' includes to suffer or permit to work."). Defendants argue that Plaintiffs cannot establish the second element because Defendants did not have actual or constructive notice that each employee was performing work for which she was not compensated.

Defendants argue that they cannot have had actual or constructive notice that Plaintiffs worked off the clock or had out-of-pocket expenses. First, argue Defendants, Butler and the Cams had written policies asking employees not to work off the clock. According to Defendants, they had no way of knowing that Plaintiffs violated this policy because Plaintiffs did not record their time. Second, some of the employees also worked off the clock on Sundays when the Cams were not present at the restaurant. The Defendants argue that because the Cams were not present on Sundays, they could not have witnessed this unauthorized work occurring. Finally, some of the plaintiffs testify in their depositions that they did not tell the Cams that they had out-of-pocket expenses. In her declaration, Antonia Cam ("Ms. Cam") also states that she provided FH employees with pens, crayons, and lighters and could not have known that employees purchased their own supplies.[2]

---

[2] Ms. Cam Dec., Dkt. 125 ¶ 4.

Plaintiffs respond that circumstantial and direct evidence create a genuine issue for trial concerning notice. Defendants' written policy stated only that employees should not be on the clock outside their shift hours, not that they should refrain from performing such work. In their declarations, Plaintiffs testify that they told the Cams that they did not have enough shift time to perform all their tasks, especially on Sundays.[3] Further, Hahn testifies that Mr. Cam told her to pay for any shortage in payment caused by transactions errors or by customers.[4] Payton also states that Mr. Cam specifically told her to do her end-of-shift accounting off the clock.[5] Finally, Plaintiffs assert that they "had" to buy their own supplies[6] and that Defendants at least should have known that this was occurring because of their presence at the restaurant on most days.

At the summary judgment stage, the Court must draw all reasonable inferences in favor of the nonmoving party, Plaintiffs. Because Plaintiffs informed the Cams that they did not have enough time to perform their assigned tasks and the Cams were frequently present at the restaurant, it is reasonable to infer that the Cams knew that Plaintiffs performed required tasks off the clock. The Cams' presence at the restaurant also gives rise to a reasonable inference that they saw FH employees using their own pens, crayons, and lighters. Based on the evidence presented and drawing reasonable inferences in Plaintiffs' favor, the Court finds that a genuine issue of material fact exists regarding whether Defendants had actual or constructive notice of the uncompensated work Plaintiffs allegedly performed and Plaintiffs' out-of-pocket expenses. The Court therefore denies Defendants' first wage-and-hour motion.

---

[3] Chastain Dec., Dkt. 130 ¶¶ 3-6, 8; Hahn Dec., Dkt. 130 ¶¶ 4, 6, 7; Harris Dec., Dkt. 130 ¶ 5; Payton Dec. ¶ 3.

[4] Hahn Dec., Dkt. 130 ¶ 6.

[5] Payton Dec., Dkt. 130 ¶ 3.

[6] *See, e.g.*, Chastain Dec., Dkt. 14 ¶¶ 5-7.

### 2.  Defendants' *De Minimis* Defense

Defendants also argue that Plaintiffs fail to show that their "work" was "not *de minimis*." *Espinoza*, 290 F.R.D. at 501 (quoting *Forrester*, 646 F.2d at 414) (quotation marks omitted). Work is *de minimis* only where it is for "uncertain and indefinite periods of time . . . and where the failure to count such time is due to considerations justified by industrial realities." 29 C.F.R. § 785.47. No employer may "arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him." *Id.* Plaintiffs argue that Defendants required Plaintiffs to complete all the tasks they performed during the uncompensated time and that the time therefore cannot be *de minimis*.

Defendants correctly note that courts have found that some required time—such as time spent donning and doffing—is *de minimis*. Such time is *de minimis*, however, only if it involves "[s]plit-second absurdities [that] are not justified by the actualities of working conditions or by the policy of the [FLSA]." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946), *superseded on other grounds by statute as stated in Integrity Staffing Sols., Inc. v. Busk*, 135 S. Ct. 513 (2014). The FLSA requires employers to compensate employees for any activity that "is integral and indispensable to the principal activities that an employee is employed to perform," that is if the employee's activity is "an intrinsic element of [the employer's] activities and one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing*, 135 S. Ct. at 519. The question whether Plaintiffs' activities were integral or indispensable to Defendants' business is a question of fact. Therefore, the Court denies Defendants' second wage-and-hour motion.

### 3. Uniform Laundering

Defendants also argue that Plaintiffs' uniforms were made of wash-and-wear material and required no special laundering. The U.S. Department of Labor, Wage and Hour Division's Field Operations Handbook states:

> [I]n those instances where uniforms are (a) made of "wash and wear materials", (b) may be routinely washed and dried with other personal garments, and (c) do not <u>require</u> ironing or any other special treatment such as drycleaning, daily washing, or commercial laundering, [the Division] will not require that employees be reimbursed for uniform maintenance costs. This position is not applicable where daily washing is required and the employer furnishes or reimburses the employee for a single uniform.[7]

Plaintiffs assert that Defendants required them to wear clean uniforms and that Defendants did not furnish enough uniforms for Plaintiffs to wear clean uniforms without washing them daily. Plaintiffs submit declarations to this effect.[8] Defendants respond only that Plaintiffs have not presented sufficient evidence on this point. Because Plaintiffs who were FH employees testify that Defendants required them to wear clean uniforms and did not furnish sufficient uniforms to do so without washing the uniforms daily, the Court finds that a genuine issue of material fact exists on these issues. Accordingly, the Court denies Defendants' third wage-and-hour motion.

## B. Discrimination Claims

Defendants move for summary judgment on all Plaintiffs' discrimination claims because: (1) Plaintiffs cannot establish a prima facie case of disparate treatment under § 1981 or Oregon state law; (2) Plaintiffs' cannot establish a prima facie case of harassment because the conduct

---

[7]USDOL Field Operations Handbook § 30c12(b)(2), Dkt. 126 at 109 (emphasis in original).

[8] *See, e.g.*, Chastain Dec., Dkt. 130 ¶ 2.

was not sufficiently severe or pervasive; and (3) the statute of limitations bars Plaintiffs'

discrimination claims under state law.

### 1. Disparate Treatment

In Defendants' first and third motions relating to discrimination, they argue that Plaintiffs

fail to show disparate treatment on the basis of race, national origin, religion, sexual orientation,

sex, or age as required to establish a prima facie case under § 1981 and ORS § 659A.030. The

burden-of-proof framework for Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2,

applies to § 1981. *Equal Emp't Opportunity Comm'n v. Inland Marine Indus.*, 729 F.2d 1229,

1233 n.7 (9th Cir. 1984) ("A plaintiff must meet the same standards in proving a § 1981 claim

that he must meet in establishing a disparate treatment claim under Title VII . . . ."). Because

Oregon modelled ORS § 659A.030 after Title VII, courts analyze the claims together. *See*

*Dawson v. Entek Int'l*, 630 F.3d 928, 935 (9th Cir. 2011); *Heller v. EBB Auto Co.*, 8 F.3d 1433,

1437 n.2 (9th Cir. 1993). The Court therefore analyzes Plaintiffs' § 1981 and ORS § 659A.030

under the same Title VII framework.

To establish a Title VII prima facie case of disparate treatment under the federal burden-

shifting framework, a plaintiff must show that: (1) the plaintiff is a member of a protected class;

(2) the plaintiff was qualified for his or her position and performing the job satisfactorily; (3) the

plaintiff suffered some adverse employment consequence; and (4) similarly situated individuals,

outside of the plaintiff's protected class, were treated more favorably. *McDonnell Douglas Corp.*

*v. Green*, 411 U.S. 792, 802 (1973). After a plaintiff establishes a prima facie case, the burden

shifts to the employer to articulate a nondiscriminatory reason for the adverse employment

action. *Id.*

If the defendant shows a nondiscriminatory reason, then the burden returns to the plaintiff

to prove that the defendant's nondiscriminatory reason is mere pretext. *Id.* at 804. A plaintiff

may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Additionally, in a disparate treatment case, "[p]roof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977); *see also Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993) ("Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome.").

### a.  Race, National Origin, and Religion

For these claims, Defendants dispute only the fourth element of Plaintiffs' prima facie case, arguing that Plaintiffs have not shown that similarly situated individuals who were Russian Old Believers received more favorable treatment. To support their claims for racial, national origin, and religious discrimination, Plaintiffs assert that Defendants rehired the four Russian employees who worked at Canby Pub & Grill before the October 2012 closure. Of the Russian employees, all were thus rehired while only 15 percent of the non-Russian employees were retained. According to Plaintiffs, after the restaurant reopened, Russians made up 36 percent of the FH employees and 25 percent of the entire staff. In their declarations, Plaintiffs also state that Defendants took shifts and hours away from Plaintiffs and gave them to Russian employees.[9]

Defendants respond that they rehired the four purportedly Russian employees because those employees reapplied to Canby Pub & Grill. In contrast, Plaintiffs did not reapply. Additionally, of the four people whom Plaintiffs assert are Russian, one of those employees was

---

[9] *See, e.g.*, Chastain Dec., Dkt. 130 ¶ 10.

not actually Russian.[10] Further, Defendants present evidence that only one Russian employee, Polly Seledkov, held the same position as any of the plaintiffs and therefore could have taken shifts away from Plaintiffs.[11] Defendants assert that Ms. Seledkov did not, however, take shifts away from Plaintiffs because she was hired only a few weeks before the October 2012 closure to fill in for Plaintiff Patricia Harris ("Harris"), who was on medical leave at the time.[12]

Plaintiffs offer no further evidence of similarly situated Russian Old Believer employees being treated more favorably than Plaintiffs. Plaintiffs do not present evidence that Defendants asked Russian Old Believers to reapply but did not ask Plaintiffs. Nor do Plaintiffs present evidence that Russian Old Believers worked more total hours than Plaintiffs. Therefore, the Court finds that Plaintiffs have not met their burden of presenting evidence that Defendants treated similarly situated individuals outside Plaintiffs' protected class more favorably than Plaintiffs.

Even if Plaintiffs had established a prima facie case, Defendants offer a nondiscriminatory reason for why they failed to rehire some employees who were not Russian Old Believers: those employees did not reapply. Similarly, Defendants offer a non-discriminatory reason for why Ms. Seledkov received shifts instead of Plaintiffs: Harris was on medical leave and Ms. Seledkov was an excellent employee.[13] The burden thus shifts back to Plaintiffs to put forth evidence that Defendants' nondiscriminatory reasons are really a pretext for discrimination on the basis of race, national origin, or religion. Plaintiffs, however, present no

---

[10] Antonia Cam Dec., Dkt. 136 ¶ 2.

[11] Antonia Cam Dec., Dkt. 136 ¶ 2.

[12] *See* Plaintiffs' Response to Defendants Motion for Summary Judgment, Dkt. 127 at 10 n.2.

[13] Antonia Cam Dec., Dkt. 136 ¶ 2.

evidence showing that these nondiscriminatory reasons are mere pretext for racial, national

origin, or religious discrimination. Although Harris asserts that she did not reapply because

Mr. Cam told her not to do so, she also states that this was because she was not young and pretty

enough rather than because she was not a Russian Old Believer.[14] Therefore, the Court finds that

Plaintiffs have not met their burden of establishing a prima facie case of discrimination on the

basis of race, national origin, or religion or of showing that Defendants' nondiscriminatory

reasons for the adverse employment action were pretext for discrimination on the basis of race,

national origin, or religion. Accordingly, the Court grants Defendants' motions regarding

Plaintiffs' § 1981 claims and Plaintiffs' state law claims for discrimination based on race,

national origin, and religion.

### b.  Sexual Orientation and Sex Discrimination

Plaintiffs also assert that Defendants discriminated against them on the basis of sexual

orientation. In support of this assertion, Plaintiffs present Harris's testimony that Mr. Cam made

harassing comments to her and Hahn at work about whether they were lesbians.[15] Plaintiffs do

not assert that they are homosexual, and they offer no further evidence regarding discrimination

on the basis of sexual orientation. Because Plaintiffs present no evidence that Defendants gave

more favorable treatment to similarly situated employees outside Plaintiffs' protected class, the

Court grants Defendants' motion regarding Plaintiffs' state law claims for discrimination based

on sexual orientation.

Plaintiffs similarly assert that Defendants discriminated against them because they are

women. Plaintiffs do not assert that any male employees received more favorable treatment than

---

[14] Harris Dec., Dkt. 130 ¶ 3.

[15] Harris Dep., Dkt. 126 at 78.

Plaintiffs. Rather, they argue that Plaintiffs received adverse treatment because they did not live up to stereotypes about how women should look. As evidence of their adverse treatment as a result of not meeting certain stereotypes, Plaintiffs point to Mr. Cams' statements about needing 'younger, prettier girls.'[16] The Supreme Court has recognized "that employment decisions cannot be predicated on mere 'stereotyped' impressions about the characteristics of males or females." *City of L.A., Dep't of Water & Power v. Manhart*, 435 U.S. 702, 707 (1978). Similarly, the Ninth Circuit has held that using purportedly objective criteria such as beauty and weight in employment decisions can be discriminatory even when all employees experience the same treatment. *Gerdom v. Cont'l Airlines, Inc.*, 692 F.2d 602, 608 (9th Cir. 1982) ("The fact that [a weight requirement] applied to an intentionally all-female job classification does not alter the analysis or make the policy less facially discriminatory.").

The only evidence that Plaintiffs present, however, that Defendants made employment decisions based on female employees' attractiveness is a conclusory statement in their response brief. According to Plaintiffs, Defendants "did in fact hire only women whom Georgi Cam found sexually attractive (he used the term 'eye candy[]')."[17] Plaintiffs do not offer any sworn testimony that Mr. Cam hired women on this basis. In their depositions, Plaintiffs all admit that they do not know of any facts that suggest sex played a role in their termination.[18] Without more evidence that Defendants predicated employment decisions on stereotyped impressions about the characteristics of women, Plaintiffs cannot establish a prima facie case of sex discrimination.

---

[16] *See, e.g.*, Chastain Declaration, Dkt. 130 ¶ 11.

[17] Dkt. 127 at 14.

[18] Townsend Dep., Dkt. 126 at 9-10; Payton Dep., Dkt. 126 at 41; Harris Dep., Dkt. 126 at 79; Chastain Dep., Dkt. 126 at 94; Hahn Dep., Dkt. 126 at 105.

The Court therefore grants Defendants' motion regarding Plaintiffs' claims for sex discrimination.

### c.  Age

Plaintiffs testify that they either routinely heard Mr. Cam make comments about wanting "younger, prettier girls" at the restaurant or heard others repeat his comments.[19] After the restaurant's closure, Defendants did not rehire the seven oldest employees. Before the closure, ten total employees and six FH employees were over the age of 50, but after the closure, only one employee was over 50 and no FH employees were over 50. Before the closure and rehire, the average age of all employees was 40; after, it was 30. Before the closure, the average age of FH employees was 41; after, it was 29. Although the total number of employees went down after the closure, the number of female employees under 30 went up by two. Based on this evidence, Plaintiffs have presented a genuine issue for trial regarding whether similarly situated younger women were treated more favorably than Plaintiffs. Plaintiffs have established their prima facie case, and the burden shifts to Defendants to articulate a nondiscriminatory reason for their employment decisions.

Defendants' assert that they did not rehire Plaintiffs because they did not reapply to work at the restaurant. This is a nondiscriminatory reason for Defendants' actions, and the burden shifts back to Plaintiffs to show that this nondiscriminatory reason is mere pretext for age discrimination. Harris asserts that she did not reapply because Mr. Cam told her not to do so and that this conversation occurred sometime around Mr. Cam talking about needing younger

---

[19] Chastain Dec., Dkt. 130 ¶ 11.

employees.[20] Harris also heard Mr. Cam "frequently" say, "We need to get some young ones in here."[21] Additionally, Townsend presents testimony that Mr. Cam once made a comment that she was old enough to be his mother.[22] Further, Plaintiffs offer the statistical evidence discussed above. Although the statistical evidence is circumstantial, "in the context of summary judgment, Title VII does not require a disparate treatment plaintiff relying on circumstantial evidence to produce more, or better, evidence than a plaintiff who relies on direct evidence." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1030 (9th Cir. 2006). Plaintiffs have met their burden of showing a genuine dispute of material fact regarding whether Defendants' nondiscriminatory reason for terminating Plaintiffs was pretext for age discrimination. Accordingly, the Court denies Defendants' motion for summary judgment against Plaintiffs' age discrimination claims.

### 2. Sexual Harassment

Plaintiffs also assert that Mr. Cam sexually harassed them at work. A plaintiff may establish a Title VII[23] violation "by proving that discrimination based on sex created a hostile or abusive work environment." *Meritor Sav. Bank FSB v. Vinson*, 477 U.S. 57, 66 (1986). To establish such an abusive work environment, Plaintiffs must show that the conduct was "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Id.* (alteration in original) (quoting *Henson v. City of*

---

[20] Harris Dec., Dkt. 130 ¶ 3.

[21] Harris Dep., Dkt. 126 at 72.

[22] Townsend Dep., Dkt. 126 at 12.

[23] Oregon courts look for guidance to federal Title VII cases when deciding whether sexual harassment took place under Oregon law. *See Harris v. Pameco Corp.*, 170 Or. App. 164, 176 (2000).

*Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)). Conduct may be severe or pervasive where it "affect[s] seriously the psychological wellbeing of employees." *Fred Meyer, Inc. v. Bureau of Labor & Indus.*, 152 Or. App. 302, 309 (1998) (quoting *Holien v. Sears, Roebuck & Co.*, 298 Or. 76, 89 (1984)).

Plaintiffs present testimony that Mr. Cam "was always making disgusting sex comments."[24] Townsend states that she heard Mr. Cam make "dirty jokes" that made her feel "uncomfortable."[25] According to Townsend, she did not complain about the jokes because she did not want to lose her job. Harris states that she heard Mr. Cam tell employees, "If I don't get laid every day, I'm not very happy. And, [Ms. Cam] doesn't give very good blow jobs."[26] Harris explains that she was "deeply" offended by these comments and that the comments made her not want to work around Mr. Cam, which she still had to do every shift.[27] Harris further states that she heard Mr. Cam talk to a young server about the server's large breasts.[28] Furthermore, according to Harris, she "frequently" saw Mr. Cam suggestively rub his genitals in front of female employees and heard him talk about the size of his genitals.[29] Chastain also presents testimony that she heard Mr. Cam talk about Ms. Cam performing oral sex.[30] Additionally, according to Chastain, she, too, heard Mr. Cam talk about the size of his genitals. The comments

---

[24] Chastain Dec., Dkt. 130 ¶ 11; Hahn Dec., Dkt. 130 ¶ 8; Payton Dec., Dkt. 130 ¶ 8; Townsend Dep., Dkt. 130 ¶ 4.

[25] Townsend Dep., Dkt. 126 at 10.

[26] Harris Dep., Dkt. 126 at 76.

[27] Harris Dep., Dkt. 126 at 76-77.

[28] Harris Dep., Dkt. 126 at 78.

[29] Harris Dep., Dkt. 126 at 78.

[30] Chastain Dep., Dkt. 126 at 93.

"bothered" and "embarrassed" her.[31] Hahn similarly states that she heard Mr. Cam talk about how often he likes to have sex.[32] According to Hahn, like Harris, she felt "uncomfortable" but did not complain because she did not want to lose her job.[33] These allegations raise a genuine issue of material fact regarding whether Mr. Cam's conduct was sufficiently severe or pervasive to alter the conditions of Plaintiffs' employment. Accordingly, the Court denies Defendants' motion regarding Plaintiffs' sexual harassment claims.

### 3.  Statute of Limitations

Defendants argue that the applicable statute of limitations bars Plaintiffs' discrimination claims. Under Oregon law, the statute of limitations for employment discrimination claims is one year. ORS § 659A.820(2). Because the Court grants Defendants' motions regarding discrimination on the basis of race, national origin, religion, sexual orientation, and sex, the Court only addresses whether the statute of limitations bars Plaintiffs' age discrimination and sexual harassment claims.

Plaintiffs filed this lawsuit on October 9, 2013. Defendants argue that the one-year statute of limitations bars any conduct that occurred before October 9, 2012. Defendants concede, however, that any claims based on incidents occurring between October 9, 2012, and October 29, 2012, when Plaintiffs' employment with Canby Pub & Grill officially ended, are not

---

[31] Chastain Dep., Dkt. 126 at 93-94.

[32] Hahn Dep., Dkt. 126 at 104.

[33] Hahn Dep., Dkt. 126 at 105.

time barred.[34] Plaintiffs assert that age discrimination occurred when Defendants terminated all employees on October 29, 2012. Therefore, Plaintiffs' age discrimination claims are timely.

Further, the Supreme Court has held that if any act that contributes to a hostile work environment falls within the statutory time period, the finder-of-fact may consider the entire time period of the hostile environment to determine liability. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002); *see also Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 892-94 (9th Cir. 2005) (reversing and remanding the district court's holding that hostile work environment claims were time barred because some conduct contributing to the hostile work environment continued into the statutory period). Plaintiffs have asserted that Mr. Cam frequently made sexual jokes that continually made them feel uncomfortable. Viewed in the light most favorable to Plaintiffs, the record contains sufficient evidence to permit an inference that Defendants created a sexually hostile environment that persisted beyond October 9, 2012. Therefore, Plaintiffs' sexual harassment claims based on a hostile environment are not time barred. The Court denies Defendants' motion based on the statute of limitations.

## C.  Retaliation Claims

Defendants also move for summary judgment against Plaintiffs' federal and state retaliation claims. The FLSA's anti-retaliation provision makes it unlawful for "any person" to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act. . . ." 29 U.S.C. § 215(a)(3). This provision also protects "employees who have complained

---

[34] Defendants assert that Harris's last day of work was September 3, 2012. Harris states, however, that although she did not take a shift with Canby Pub & Grill after that day, her employment officially lasted until the Canby Pub & Grill shut down on October 29, 2012.

to their employers." *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1151 (9th Cir. 2000).

The elements of a retaliation claim under 29 U.S.C. § 215(a)(3) include:

> (1) the plaintiff must have engaged in statutorily protected conduct under § 15(a)(3) of the FLSA, or the employer must have erroneously believed that the plaintiff engaged in such conduct; (2) the plaintiff must have suffered some adverse employment action; and (3) a causal link must exist between the plaintiff's conduct and the employment action.

*Singh v. Jutla & C.D. & R's Oil, Inc.*, 214 F. Supp. 2d 1056, 1059 (N.D. Cal. 2002). Plaintiffs assert that Defendants fired them for complaining about time shaving. In their declarations, Plaintiffs assert either that they directly complained to Defendants about time shaving or that others complained on their behalf.[35] Defendants argue that even if this were true, Plaintiffs cannot show that a causal link exists between their conduct and their termination.

In their depositions, Plaintiffs never state that they believe that complaints about time shaving led to their termination. To the contrary, Payton, for example, testifies that she did not complain about time shaving and does not believe she was terminated in retaliation for time-shaving complaints.[36] Additionally, Plaintiffs have not produced any statements by Defendants or circumstantial evidence, such as the timing of the complaints and Plaintiffs' termination, to suggest that time-shaving complaints led to the adverse employment action. Even when viewed in the light most favorable to Plaintiffs, the non-moving party, the evidence does not show a causal link between Plaintiffs' alleged complaints and their termination. Because no genuine issue of material fact exists on this issue, the Court grants Defendants' motion regarding Plaintiffs' retaliation claims.

---

[35] Chastain Dec., Dkt. 130 ¶ 7; Hahn Dec., Dkt. 130 ¶ 2; Payton Dec., Dkt. 130 ¶ 5; Townsend Dec., Dkt. 130 ¶ 2; Kaye Reich ("Reich") Dec., Dkt. 130 ¶ 2.

[36] Payton Dep., Dkt. 126 at 49.

### D.  Common Law Claims

Defendants move for summary judgment on each of Plaintiffs' common law claims of wrongful discharge, conversion, intentional interference with economic relations, and intentional infliction of emotional distress. They are addressed in turn.

#### 1.  Wrongful Discharge

In their complaint, Plaintiffs assert a common-law wrongful discharge claim "[i]n the event that Plaintiffs are unable to obtain a remedy via the claims otherwise herein alleged."[37] Plaintiffs base the claim on the assertion that Defendants "wrongfully and unlawfully terminated them for the socially undesirable motives previously discussed."[38] In their response to Defendants' motion, however, Plaintiffs assert that Defendants wrongfully discharged them for complaining about Mr. Cam's violations of Oregon's liquor control laws. According to Plaintiffs, no statutory cause of action exists for opposing such violations by an employer. Defendants move against Plaintiffs' common-law wrongful discharge claim on the basis that there is no common law remedy if a statutory remedy, such as the FLSA, already adequately protects societal interests. Based on Plaintiffs' response to Defendants' motion, Defendants also argue that Plaintiffs failed to put Defendants on notice of their claim regarding Oregon liquor control laws and that Plaintiffs have not shown a causal link between their complaints and their termination.

The Court does not decide whether an adequate statutory remedy exists or whether Plaintiffs put Defendants on notice of the nature of their claims. Even if no adequate statutory remedy exists and Plaintiffs did put Defendants on notice, Plaintiffs have failed to create a

---

[37] Complaint, Dkt. 1 ¶ 59.

[38] Complaint, Dkt. 1 ¶ 59.

genuine issue of material fact concerning the elements of wrongful discharge. In Oregon, "[a] claim of wrongful discharge must be premised upon a discharge ***because*** the employee was fulfilling an important societal obligation or was pursuing a job-related right that reflects an important public policy." *Hall v. State*, 274 Or. App. 445, 455 (2015) (emphasis added). Courts entertain wrongful discharge claims only when plaintiffs can establish that they "[were] discharged ***as a consequence of*** the actions that [they] took to fulfill an important public duty." *McManus v. Auchincloss*, 271 Or. App. 765, 773, *review denied*, 358 Or. 145 (2015) (emphasis added). In their declarations, Plaintiffs testify that they complained about Mr. Cam drinking on duty, serving visibly intoxicated patrons, and serving homemade wine.[39] Plaintiffs present no evidence regarding the timing of these complaints or linking the complaints in any way to their discharge on October 29, 2012. In the absence of evidence of causation, the Court grants Defendants motion concerning Plaintiffs' wrongful discharge claim.

### 2. Conversion

Plaintiffs assert a common-law conversion claim for the theft of tips and wages from their work at banquets held in Canby Pub & Grill's ballroom. Defendants move against these claims on the basis that Oregon's wage-and-hour statutes provide the exclusive remedy for claims related to payment of wages. Although Oregon courts have not decided the issue, federal courts have addressed whether the FLSA and Oregon's wage-and-hour statutory scheme preempts state common law claims duplicative of the remedies afforded by statutes. For example, in deciding that plaintiffs could bring common law claims for fraud against their employer, the Ninth Circuit stated that, in contrast to fraud claims, "[c]laims that are directly covered by the FLSA (such as overtime and retaliation disputes) must be brought under the FLSA." *Williamson*, 208 F.3d at.

---

[39] *See, e.g.*, Chastain Dec., Dkt. 130 ¶ 9; Harris Dec., Dkt. 130 ¶ 4.

Interpreting *Williamson*, the court in *Helm v. Alderwoods Group, Inc.*, 696 F. Supp. 2d 1057 (N.D. Cal. 2009), decided a case in which the defendants argued that the FLSA preempted the plaintiffs' common law claims, including a common law claim for conversion. The plaintiffs argued that the FLSA did not preempt their common law claims because they sought relief for violations not covered by the federal statute. *Id.* at 1075. According to the plaintiffs, the FLSA did not entitle them to relief for the defendants' failure to compensate the plaintiffs for all hours worked, regardless of whether the defendants paid the minimum wage or the required overtime rate. *Id.* The court agreed that common law claims would be available for conduct not covered by the FLSA. The court concluded, however, "that plaintiffs' common law claims are at least partially duplicative of claims for unpaid overtime that could be brought under the FLSA." *Id.* According to the court, "While the FLSA's savings clause allows states and municipalities to enact wage and hour legislation that is *more* favorable to workers than the FLSA, the federal statute preempts common law claims that seek remedies for rights protected by the FLSA (such as minimum wage and overtime pay)." *Id.* at 1076 (emphasis in original). Therefore, the court dismissed the plaintiffs' common law claims.

Similarly, another court in this district has decided that Oregon's wage-and-hour statutes preempt duplicative common law claims. *Gessele v. Jack in the Box, Inc.*, 2016 WL 1056976, at *20 (D. Or. Mar. 10, 2016) [hereinafter *Gessele II*]. The court based its holding on Oregon cases generally discussing whether statutes preempt state common law claims, including *Palmer v. Bi-Mart Company*, 92 Or. App. 470 (1988). Looking to these cases, the court held:

> . . . [T]o the extent that Plaintiff's Seventh and Eighth Claims involve conduct by Defendant that is prohibited by Oregon's wage-and-hour laws (such as the failure to pay overtime, the failure to pay minimum wages, the failure to pay all wages when due, and/or wrongful deductions in violation of § 652.610(3)), the

> Court concludes Oregon's wage-and-hour statutes preempt those claims.

*Id.*

The Court finds the reasoning in *Helm* and *Gessele II* persuasive. Congress and the Oregon legislature have provided remedies for wage-and-hour violations under federal and state statutory schemes. When a plaintiff's common law claims are at least partially duplicative of these remedies, the claims are preempted. Here, Plaintiffs' claims for unpaid tips and wages at least partially duplicate their minimum wage, overtime, and time-shaving claims. The federal and state statutes thus preempt Plaintiffs' common law claim for conversion, and the Court thus grants Defendants' motion on this matter.

### 3.  Intentional Interference with Economic Relations

Defendants also move against Plaintiffs' claims for intentional interference with economic relations on the basis that Defendants could not interfere with their own contracts with Plaintiffs. Plaintiffs concede that a person cannot interfere with his or her own contract. Plaintiffs argue, however, that Plaintiffs' employment contract was with Butler. Therefore, argue Plaintiffs, the Cams can be held liable for interfering with this contract by preventing Plaintiffs from receiving tips and wages for work in the Canby Pub & Grill ballroom.

To prove a claim for intentional interference with economic relations, a plaintiff must show:

> (1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages.

*McGanty v. Staudenraus*, 321 Or. 532, 535 (1995). Although Plaintiffs assert that Defendants

interfered with the contract between Butler and Plaintiffs, Plaintiffs do not present evidence that

this contract existed or that Defendants intentionally interfered with it. Nor do Plaintiffs present

evidence that Defendants acted as officers of a separate, third-party corporation when they

allegedly interfered with the Butler contract. In the absence of proof of all elements of a claim

for intentional interference with economic relations, the Court finds that Plaintiffs have not

shown a genuine issue of material fact concerning this issue. Thus, the Court grants Defendants'

motion regarding intentional interference with economic relations.

### 4.  Intentional Infliction of Emotional Distress

Defendants argue that Plaintiffs have not presented sufficient evidence that Defendants

intended to inflict severe mental or emotional distress on Plaintiffs. *See generally Hetfeld v.

Bostwick*, 136 Or. App. 305, 308 (1995) (stating that a claim for intentional infliction of

emotional distress requires plaintiffs to show that a defendant "intended to inflict severe mental

or emotional distress on the plaintiff" and "that the defendant's actions consisted of 'some

extraordinary transgression of the bounds of socially tolerable conduct' or exceeded 'any

reasonable limit of social toleration'" (quoting *Patton v. J.C. Penney Co.*, 301 Or. 117, 122

(1986)). Plaintiffs offer no response to Defendants' motion and present no evidence to raise a

genuine issue of material fact on this matter. Therefore, the Court grants Defendants' motion

regarding intentional infliction of emotional distress.

### E.  Proper Consents

A plaintiff must file proper consent to become a party to a collective action under the

FLSA. 29 U.S.C. § 216(b). ("No employee shall be a party plaintiff to any such action unless he

gives his consent in writing to become such a party and such consent is filed in the court in

which such action is brought."). The plaintiff must file this consent, at the latest, within three

years of the cause of action accruing. 29 U.S.C. §§ 255(a), 256. Defendants argue that Plaintiffs, as the named plaintiffs in the FLSA collective action, failed to file proper written consents within three years of the accrual of their claims. Plaintiffs respond that signing the complaint within two years of the cause of action accruing satisfies the FLSA's requirements.

The Ninth Circuit has not yet decided whether signing a complaint serves as proper consent. Courts within the Ninth Circuit have held that signing the complaint is at least the minimum requirement. *See, e.g.*, *Gessele v. Jack in the Box, Inc.*, 6 F. Supp. 3d 1141, 1158 (D. Or. 2014), *as amended* (May 15, 2014) [hereinafter *Gessele I*] (holding that named plaintiffs in a FLSA action, who did not sign the complaint, must separately file written consents); *Thomas v. Talyst, Inc.*, 2008 WL 570806, at *2 (W.D. Wash. Feb. 28, 2008) ("A named plaintiff may provide the required written consent either by personally signing the complaint, or by signing and filing a separate document that provides his or her written consent.").

Courts have held that the purpose of the FLSA's consent requirement is to ensure that members of the collective action "identify themselves for the benefit of the defendant," *Allen v. Atl. Richfield Co.*, 724 F.2d 1131, 1135 (5th Cir. 1984), and that parties do in fact agree to be "bound by whatever judgment is eventually entered in the case," *Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004). Signing a complaint may serve the first purpose by notifying defendants of who has joined the action. But the mere signing of a collective action complaint may not fully serve the second purpose of confirming that the named plaintiffs understand that they agree to be bound by the judgment.

Given the split in authority and the multiple purposes of the FLSA's consent requirement, Plaintiffs could reasonably have believed that signing the complaint served as proper consent. Moreover, Plaintiffs filed their complaint before Judge Brown issued her decision in *Gessele I*

indicating that this district may require separately filed written consents. The *Gessele I* decision is also somewhat inapposite because the named plaintiffs in that case did not sign either the complaint or separate consents. Here, because Plaintiffs signed the complaint and did not have the benefit of the *Gessele I* opinion when they filed their complaint, the Court finds that Plaintiffs filed proper consent under the FLSA. The Court therefore denies Defendants' motion regarding consent.

## CONCLUSION

Defendants Motion for Summary Judgment (Dkt. 124) is DENIED in part and GRANTED in part. The Court denies Defendants' motions relating to wage-and-hour claims, age discrimination claims, sexual harassment claims, the statute of limitations for employment discrimination claims, and proper consent under the FLSA. The Court grants Defendants' motions relating to all other discrimination claims and all common law claims.

**IT IS SO ORDERED**.

DATED this 20th day of April, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge